## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| DYLAN EGLESTON, Individually And On Behalf Of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>UNIVERSITY OF FLORIDA BOARD OF TRUSTEES, AS THE PUBLIC BODY CORPORATE OF UNIVERSITY OF FLORIDA, and FLORIDA BOARD OF GOVERNORS FOUNDATION, INC.,<br><br>        Defendants. | Case No.: 1:20-cv-106-AW/GRJ<br><br><br>**JURY TRIAL DEMANDED** |

## AMENDED CLASS ACTION COMPLAINT

Plaintiff Dylan Egleston ("Plaintiff"), by and through undersigned counsel, brings this action against University of Florida Board of Trustees and the Florida Board of Governors Foundation, Inc. ("Defendants") on behalf of himself and all others similarly situated, and makes the following allegations based upon information, attorney investigation and belief, and upon Plaintiff's own knowledge:

## I.    NATURE OF THE CASE

1.      This is an action for breach of contract, unjust enrichment, conversion, and violation of the Florida Deceptive and Unfair Trade Practices Act, § 501.201 *et seq.*, and violations of the Fifth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983, against Defendants.

2.      This is a class action brought on behalf of Plaintiff and members of the putative Classes who (i) paid for in-person educational services in the form of tuition and were forced to

finish the Spring 2020 academic semester online (which is substantially cheaper than in-person education services) and (ii) services fees for the Spring 2020 academic semester at the University of Florida ("UF"), Florida A&M University, Florida Atlantic University, Florida Gulf Coast University, Florida International University, Florida Polytechnic University, Florida State University, New College of Florida, University of Central Florida, University of North Florida, University of South Florida, and University of West Florida (collectively, the "Universities") and who, because of Defendants' response and policies relating to the Novel Coronavirus Disease 2019 ("COVID-19") pandemic, are entitled to a refund on tuition and fees paid.

## II.     JURISDICTION AND VENUE

3.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one of the Defendants, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

4.     Plaintiff also brings this action pursuant 42 U.S.C. § 1983 for violations of civil rights under the Fifth and Fourteenth Amendments to the United States Constitution.

5.     This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) (civil rights); 28 U.S.C. § 1367 provides supplemental jurisdiction over the state law tort claims that arose from the same common nuclei of facts.

6.     This Court has personal jurisdiction over Defendants because Defendants conduct business in Florida and have sufficient minimum contacts with Florida.

7.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  Specifically, the contract that is the subject of this action was formed in this District.

## III.   PARTIES

### A.     Plaintiff

8.      Plaintiff Dylan Egleston was a student at UF.

### B.     Defendants

9.      Defendant University of Florida Board of Trustee ("Florida Board of Trustee") are the trustees of UF, a public land-grant, sea-grant, and space-grant research university in Gainesville, Florida.  The Florida Board of Trustee is a senior member of the State University System of Florida and traces its origins to 1853 and has operated continuously on its Gainesville campus since September 1906.

10.     Defendant Florida Board of Governors Foundation, Inc. ("Florida Board of Governors") is the governing board created under the Florida Constitution as the governing body for the State University System of Florida, which includes all public universities in the state of Florida.  Defendant Florida Board of Governors is located at 325 West Gaines Street, Suite 1614, Tallahassee, Florida.

11.     Defendants operate state agencies under color of state law.

## IV.   PRELIMINARY STATEMENT

12.     Plaintiff brings this case as a result of Defendants' decision not to issue appropriate refunds for the Spring 2020 semester after canceling in-person classes and changing all classes to an online/remote format, closing most campus buildings, and requiring all students who could leave campus to leave as a result of COVID-19.

3

13.    On or about March 11, 2020, Defendants issued an order directing all Universities to implement a process to transition to remote instruction immediately and encourage students to stay home (if they had left their campuses for spring break) or to return home.

14.    On or about March 17, 2020, Defendants extended remote learning through the end of the Spring semester at all Universities and directed all Universities to develop an alternate schedule or method of delivery for on-campus commencement ceremonies.  On-campus and other co-curricular activities, including athletic events, were cancelled.

15.    On March 20, 2020, in a letter to students at the UF, the Vice-President of Student Affairs indicated that the UF was "developing plans for issuing refunds, rebates, or credits to students who may no longer be able to utilize their university residence hall and/or dining plan contracts."  No communications were made concerning the many fees students paid associated with the Spring 2020 semester or the difference in prices between in-person classes and on-line learning.

16.    On or about March 27, 2020, UF announced that it would soon begin distributing partial housing and dining refunds for students.  Students who formally checked out of their on-campus housing before March 24, 2020 would be offered a housing refund based on their checkout date.  Students who stopped using their meal plan after March 23, 2020 would also receive a refund for the unused portion of their meal plan, including flex bucks.  These refunds would be automatically distributed to students' accounts.  Once again, no mention was made concerning students' fees or reduction in tuition because classes were now held online versus in-person.

17.    On March 30, 2020, UF announced Regulation 3.0372, which states that Student Health, Athletic, Activity and Service and Transportation Access Fees, would be amended to reflect the proposed revised Student Fees per credit hour basis for Summer 2020. The Notice of

4

Proposed Regulation to Amendment indicated that the UF would be reducing the Activity and Service, Athletic, Health, and Transportation Fees, but adding a "Distance Learning Fee," for a total fee reduction from the Spring semester of eight cents.   When explaining the proposed reduction in fees, W. Andrew McCollough, UF's associate provost for teaching and technology stated:  "The general rationalization was, with the students gone, it was no longer necessary for them to pay for access to services that will not be where they are."  This same rationale applies to this class action since the students have not had access to the services being charged or the difference in the amount paid in-person learning versus online learning.

18.     These decisions deprived Plaintiff and the other members of the Classes from recognizing the benefits of on-campus enrollment, access to campus facilities, student activities, and other benefits and services in exchange for which they had already paid tuition and fees.

19.     Defendants have either refused to provide reimbursement for the tuition, fees and other costs that Defendants failed to provide during the Spring 2020 semester, or have provided inadequate and/or arbitrary reimbursement that does not fully compensate Plaintiff and members of the Classes for their loss.

20.     Defendants have retained the value of monies paid by Plaintiff and the other Class members for tuition and fees, while failing to provide the services for which those tuition and fees were paid.  Even if Defendants have a legal right to cancel the in-person tuition and fee contracts and no longer provide the services for which the in-person tuition and fees were paid, they do not have the right to retain the monies that students and/or families paid for those services.  The inequity is further highlighted by the fact that Defendants will be receiving hundreds of millions of dollars in governmental aid to help cover the costs associated with the COVID-19 disruption.

21.     Class members have demanded the return of the unused portions of the fees that they paid through a number of channels, including through online forums. *See, e.g.,* https://www.change.org/p/university-of-florida-provide-a-partial-refund-of-tuition-fees-for-uf-students.

## V.     **THE CARES ACT ALLOCATION**

22.     The Federal Government has also responded to the COVID-19 pandemic in ways that benefit the Universities and help the Universities cover the costs associated with the disruption.

23.     The CARES Act required that at least half of the funds needed to be spent in the form of emergency aid to students, which could include grants to defray the cost of food, housing, course materials or child care, according to the U.S. Department of Education.  Upon information and belief, however, only half of the money provided to the Universities under the CARES Act will be allocated to the students.

### A.     **UF**

24.     Upon information and belief, as a result of the Novel Coronavirus Disease ("COVID-19"), the U.S. Department of Education ("DOE") allocated $31,046,411 to UF of which the minimum allocation to be awarded for emergency financial aid grants to UF students was $15,523,206.

### B.     **Florida A&M University**

25.     Upon information and belief, as a result of COVID-19, the DOE allocated $13,051,325 to Florida A&M University of which the minimum allocation to be awarded for emergency financial aid grants to Florida A&M University students was $6,525,663.

### C.     **Florida Atlantic University**

26.     Upon information and belief, as a result of COVID-19, the DOE allocated $22,429,874 to Florida Atlantic University of which the minimum allocation to be awarded for emergency financial aid grants to Florida Atlantic University students was $11,214,937.

**D.     Florida Gulf Coast University**

27.     Upon information and belief, as a result of COVID-19, the DOE allocated $11,143,620 to Florida Gulf Coast University of which $5,571,810 was allocated to Florida Gulf Coast students.

**E.     Florida International University**

28.     Upon information and belief, as a result of COVID-19, the DOE allocated $38,301,957 to Florida International University of which the minimum allocation to be awarded for emergency financial aid grants to Florida International University students was $19,150,979.

**F.     Florida Polytechnic University**

29.     Upon information and belief, as a result of COVID-19, the DOE allocated $1,253,303 to Florida Polytech University of which the minimum allocation to be awarded for emergency financial aid grants to Florida Polytech University students was $626,652.

**G.     Florida State University**

30.     Upon information and belief, as a result of COVID-19, the DOE allocated $29,339,828 to Florida State University of which the minimum allocation to be awarded for emergency financial aid grants to Florida State University students was $14,669,914.

**H.     New College of Florida**

31.     Upon information and belief, as a result of COVID-19, the DOE allocated $837,170 to the New College of Florida of which the minimum allocation to be awarded for emergency financial aid grants to New College of Florida students was $418,585.

7

### I.       University of Central Florida

32.    Upon information and belief, as a result of COVID-19, the DOE allocated $51,071,250 to the University of Central Florida ("UCF") "with a minimum of $25,535,625 to be awarded in emergency financial aid grants to UCF students . . . ."[1]

### J.       University of North Florida

33.    Upon information and belief, as a result of COVID-19, the DOE allocated $11,770,196 to the University of North Florida of which the minimum allocation to be awarded for emergency financial aid grants to the University of North Florida students was $5,885,098.

### K.       University of South Florida

34.    Upon information and belief, as a result of COVID-19, the DOE allocated $34,839,748 to the University of South Florida of which the minimum allocation to be awarded for emergency financial aid grants to the University of South Florida students was $17,419,874.

### L.       University of West Florida

35.    Upon information and belief, as a result of COVID-19, the DOE allocated $6,801,388 million to the University of West Florida of which the minimum allocation to be awarded for emergency financial aid grants to the University of West Florida students was $3,400,694.

### M.       DACA Students Will Not Receive Aid From The Cares Act

36.    Further, according to an article entitled "UF online, international and DACA students won't receive aid from CARES Act":

> While other UF students scrambled to arrange trips home, 21-year-old international student Anastasija Stevanovic was stranded in her dorm.  All flights from the U.S. to Europe were canceled.

---

[1]    *See* http://www.nicholsonstudentmedia.com/news/ucf-awards-16-7-million-in-cares-act-funds-announces-second-round/article_d18ad8c2-a76a-11ea-a4f5-df33bc0412d6.html (last visited on July 29, 2020).

On April 8, the Serbian government arranged a free flight home from Washington D.C. for Serbian international students like Stevanovic.  She paid $440 for a flight and hotel, an unexpected cost she said was a little out of her family's reach. She then set off from Gainesville to D.C. two days early, in case flights got canceled.

"Because of the uncertainty of the situation in Serbia, all the decisions were basically on the spot," Stevanovic said.

***Stevanovic is one of UF's more than 6,000 international students who remain ineligible for the U.S. government's COVID-19 emergency funding for students***, which would have helped with expenses like Stevanovic's last-minute flight.[2]

## VI.   IN-PERSON TUITION VS. ON-LINE TUITION

### A.   UF In-Person Tuition

37.   The chart below lists the 2019-2020 Academic Year Undergraduate cost of attendance at UF on Campus:

| Expense | Cost |
| --- | --- |
| Tuition/Fees[3] | $6,380 |
| Books and Supplies | $850 |
| Computer/Cell Phone | $1,230 |
| Housing | $5,750 |
| Food | $4,470 |
| Transportation | $1,110 |
| Clothing/Maintenance | $1,000 |
| Personal | $420 |
| **Total Budget** | **$21,210** |

### B.   UF On-Line Tuition

---

[2]   *See*  https://www.alligator.org/covid-19/uf-online-international-and-daca-students-won-t-receive-aid-from-cares-act/article_b0ac21dc-9a41-11ea-9437-bfc886f7e200.html (last visited on July 29, 2020); *see also*   https://www.forbes.com/sites/wesleywhistle/2020/06/11/devos-finalizes-rule-blocking-undocumented-students-from-cares-act-grants/#4aab5baf75a0 ("It's been a roller coaster at the Department of Education since Congress passed the CARES Act and President Trump signed it into law in late March. After weeks of going back and forth, Education Secretary Betsy DeVos issued a regulation Thursday that blocked undocumented students from coronavirus relief grants provided under the CARES Act.") (last visited July 29, 2020).

[3]   "Tuition/fee figures are projected estimates for 2019-2020 for incoming freshman entering UF for the first time.  Tuition/fee for continuing students may be lower.  **Out-of-state** undergraduates should add $22,278 to projected tuition/fees."  *See* https://www.sfa.ufl.edu/cost/ (last visited July 29, 2020) (emphasis in original).

38.     The chart below lists the 2019-2020 Academic Year Undergraduate On-Line cost

of attendance at UF:

| Expense | Cost |
|---|---|
| Tuition/Fees[4] | $3,876 |
| Books and Supplies | $850 |
| Computer/Cell Phone | $1,230 |
| Housing | $5,750 |
| Food | $4,470 |
| Transportation | $130 |
| Clothing/Maintenance | $1,000 |
| Personal | $420 |
| **Total Budget** | **$17,726** |

C.     **UF On-Line Optional Fee Package**

39.     UF offers undergraduate online students an optional fee package that allows these

undergraduate online students in person access to "activities and services", "health services",

"university athletics" and "transportation".   The UF Online Optional Fee Package provides the

following:

> Designed with the undergraduate ***online student*** in mind, ***the UF Online Optional Fee Package is now available***. All UF Online students, including Pathway to Campus Enrollment (PaCE) students in UF Online, ***are able to opt into this optional fee package for the same price as their on-campus peers***.
>
> *     *     *
>
> **WHAT IS IT?**
>
> The UF Online Optional Fee Package is designed to give UF Online students (including PaCE students) who choose to reside in or frequently visit Gainesville access to on campus student services. The optional fee package consists of the following fees and services:

---

[4]     "**Out-of-state** undergraduates should add $12,704 to tuition/fees." "UF Online students do not pay the Activity and Services Fee, the Health Services Fee, the University Athletics Fee, or the Transportation Fee as part of their standard cost of attendance.  UF Online students who want to utilize all campus services and activities can purchase the **UF Online Optional Fee Package**." *See* https://www.sfa.ufl.edu/cost/uf-online-cost/ (last visited July 1, 2020) (emphasis in original).

Activities & Services – Participation in recreational sports and intramurals, access to recreation and fitness facilities, and participation in programs like Gator Nights

Health Services – Access to the Student Health Care Center and Counseling and Wellness Center

University Athletics – Access to student sections and discounted pricing for athletic events (based on ticket availability)

Transportation – Fare-free service on the Regional Transit System (RTS)

For full details and list of services, please visit the FAQ on the UF Online website (http://handbook.ufonline.ufl.edu/students/student-fees).

**HOW MUCH WILL IT COST?**

The optional fee package is billed on a per credit hour basis and is the same cost on-campus students pay as part of their cost of attendance.  The cost may vary each academic year.  For the 2019-20 year the cost is ***$46.21 per credit hour***.  [Emphasis added].

40.     The following are the additional fees UF assesses:

**Activity and Service Fee** -- All students must pay an activity and service fee that is assessed on a per credit-hour or semiannual basis.

**Athletic Fee** -- All students must pay an athletic fee that is assessed on a per credit-hour or semiannual basis. Halftime graduate research and teaching assistants enrolled for eight (8) or more credit hours during the Fall or Spring Semester and all other students enrolled for nine (9) or more credit hours are eligible to purchase football tickets at the student rate.

**Audit Fee** -- Tuition and fees for audited courses are assessed at the applicable resident or non-resident per credit hour cost.

**Diploma Replacement Fee** -- Each diploma ordered after a student's initial degree application can result in a diploma replacement charge, variable, not to exceed $10.00 per item.

**Distance Learning Fee** -- Online courses may be assessed a per credit hour amount.

**Health Fee** -- All students must pay a health fee that is assessed on a per credit-hour or semiannual basis. The health fee is not part of any health insurance a student may purchase.

**Material and Supply and Equipment Use Fee** -- Material and supply fees are assessed for certain courses to offset the cost of materials or supply items consumed in the course of instruction. A list of approved courses and fees is published in the Schedule of Courses each semester.

**Off-Campus Educational Activities** -- The president or the president's designee will establish fees for off-campus course offerings when the location results in specific identifiable increased costs to the university. These fees will be in addition to the regular tuition and fees charged to students enrolling in these courses on campus. The additional fees charged are for the purpose of recovering the increased costs resulting from off campus vis-à-vis on campus offerings. As used herein, off campus refers to locations other than main campus, branch and centers.

**Technology Fee**-- All students must pay a technology fee that is assessed on a per credit-hour or semiannual basis.

**Transportation Access Fee** -- All students must pay a transportation access fee that is assessed on a per credit-hour or semiannual basis.

**Late Registration Fee** -- Any student who fails to register prior to the late registration date published in the academic calendar will be subject to the late registration fee of $100.00.

**Late Payment Fee** -- Any student who fails to pay all tuition and fees due or to make appropriate arrangements for tuition and fee payment (deferment or third party billing) by the fee payment deadline published in the academic calendar will be subject to a late payment fee of $100.00.

D.   **UF Admits The Clear Distinction Between In-Person And On-Line Degrees**

41.   In tacit acknowledgment that there is a clear and distinct discount in online degrees, the UF advertises that you can earn a "greater degree, for less."

UF Online ranks as the #1 most affordable online college according to AffordableColleges.com, meaning you can earn a greater degree, for less. And if you're seeking ways to make your education even more affordable, UF has a variety of financial aid options available.

42.     Plaintiff and members of the Classes are entitled to a *pro-rata* refund of the tuition and fees they paid to Defendants for in-person educational services as well as other marketed collegiate experiences and services that were not provided because the Universities transitioned to online only learning, and the services and experiences for which the tuition and fees were intended to pay were not provided.

## VII.     FACTS

43.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

44.     Plaintiff was enrolled as a full-time student for the Spring 2020 academic semester at UF.

45.     As a precondition for enrollment, Plaintiff was required to and did pay substantial tuition for the Spring 2020 semester either out of pocket or by utilizing student loan financing, as did all members of the putative Tuition Class (defined below).

46.     Certain institutions of higher learning (like the Universities described herein) offer curriculum and instruction that is offered on a remote basis through online learning which do not provide for physical attendance by the students.

47.     Defendants' Universities offer in-person, hands on curriculum.

48.     Defendants' Universities also offer an on-line curriculum at substantially lower price.

49.     Plaintiff and members of the putative Classes did not choose to attend another institution of higher learning, but instead chose to attend UF (and the Universities) and enrolled on an in-person basis at a significantly high tuition.

50. The tuition and fees for in-person instruction at Defendants' Universities (including UF) are higher than tuition and fees for online institutions because such costs cover not just the academic instruction, but encompass an entirely different experience which includes, but is not limited to:

(a) Face to face interaction with professors, mentors, and peers;

(b) Access to facilities such as computer labs, study rooms, laboratories, and libraries;

(c) Student governance and student unions;

(d) Extra-curricular activities, groups, and intramurals;

(e) Student art, cultures, and other activities;

(f) Social development and independence;

(g) Hands on learning and experimentation;

(h) Internships; and

(i) Networking and mentorship opportunities.

51. Plaintiff enrolled at UF to earn a degree that included the service of taking courses at the campus with live teacher interaction.

52. Defendants suspended or restricted in-person on-campus activities during the Spring 2020 semester.

53. Although Defendants offered some level of academic instruction via online classes, Plaintiff and members of the putative Classes have been and were deprived of the benefits of on-campus learning.

54. Defendants have either refused to provide reimbursement for the tuition, fees and other costs that Defendants are no longer providing, or have provided inadequate and/or arbitrary reimbursement that does not fully compensate Plaintiff and members of the Classes for their loss.

55.     Moreover, Plaintiff and members of the putative Classes have been and will be deprived of fully utilizing services for which they have already paid, including, but not limited to, access to campus facilities and other opportunities.

56.     To date, Defendants have failed and continue to fail to adequately and properly refund Plaintiff and the members of the Classes' fees for on-campus services which Defendants are no longer providing as previously agreed upon.

57.     Plaintiff and members of the Classes paid tuition and fees for in-person educational services, experiences, opportunities, and other related collegiate services for the entire semester.

58.     According to the State University System of Florida, the average undergraduate tuition and fees per credit hour for a Florida State Resident during the Spring 2020 semester is approximately $197.97, and a similar type charge was applied for Summer 2020.  Therefore, a full-time Florida resident student, taking at least 12 credits, paid approximately $2,375.64 in tuition and fees and a student taking at least 15 credits, paid approximately $2,969.55 in tuition and fees for the Spring 2020 semester.  The average per credit hour cost for a non-Florida resident is approximately $561.80, meaning a full-time student taking at least 12 credits, paid approximately $6,741.60 in tuition and fees and a full-time student taking at least 15 credits, paid approximately $8,427.00 in tuition and fees for the Spring 2020 semester.

59.     While prices vary throughout the State University System of Florida, the average tuition and fees for the Spring 2020 semester for a Florida state resident was approximately $2,957.75. The average system wide tuition and fees for a non-Florida state resident was approximately $10,311.54.

60.     Similar billing practices were employed for the Summer 2020 semester.

61.     Defendants were unable to provide in-person educational experiences, services, and opportunities for approximately 50% of the Spring 2020 semester.

62.     As a result of Defendants' closure, Defendants have not complied with their obligation to provide in-person educational services along with other experiences, opportunities, and services for which Plaintiff and the Classes paid.

63.     Upon information and belief, under the guidance of the Board of Governors, all of the Universities followed a similar protocol and procedure for shutting down campuses, cancelling organizations, events, and the like, and cancelling in-person lectures by transitioning to remote online learning only.

64.     Plaintiff and the Classes did not enter into an agreement with Defendants for online education, but rather agreed to pay for and receive in-person education from Defendants' Universities.

A.     **UF Solicitation Brochures**

65.     The Universities (UF included) do not sell merely credit hours and diplomas as one would sell some common consumer commodity.  They sell an experience – one enriched both personally and academically through social interaction and involvement with faculty and with other students.

66.     UF is no different in this respect as UF's solicitation brochure states:

**Where Will You Go From the Top?**

As a Gator, anything is possible. The University of Florida is a campus for big ideas.  UF students are dreamers and realists, artists and athletes, entrepreneurs and engineers, front-line leaders and quiet volunteers. You will be a student today, but you'll become a Gator for life.  At UF, you'll find a unique bond with individuals from all different parts of our country and globe who share a common purpose: to go further, go greater, and continually make the world better.

**Academics**

16

Learning is more than just knowing all the right answers. Great minds don't always think alike. And they shouldn't. If you're seeking to be challenged, engaged and inspired, you belong at UF.  At the University of Florida, you will choose from over 100 undergraduate majors across 16 colleges.  Beginning with your first day of class, you will be encouraged to think critically, form opinions and push beyond the status quo.  We expect that of our students because we expect that of our university.  Here, you'll explore academic opportunities that are matched by few universities in the United States. Through our University Scholars Program, ***students may work one-on-one with UF faculty on select research projects.*** Learn about another culture when you travel abroad. UF has hundreds of study abroad options to choose from. ***Or join a community of students who want additional challenge through the UF Honors Program***. Great things happen inside our doors so that greater things will happen outside them.

**Extracurricular Life**

***With almost 1,000 student organizations, all sorts of leisure activities and 19 Division I teams to cheer for, there's never a dull moment on our campus. There's also Gator Growl, the world's largest student-run pep rally, and GatorNights, the leading late-night college entertainment and midnight breakfast program in the Southeast.  The Reitz Union offers an art studio for those interested in artistic expression and a game room with its own bowling alley***. If you are looking for more adventure, fresh-water springs are abundant near Gainesville, and many students spend their day tubing down the local rivers and enjoying some Florida sun.

**Residential Life**

At the University of Florida, we take your decision to choose us as your second home very seriously. On-campus housing options include apartment, suite and traditional-style residence communities. More than 8,500 Gators live on campus, including more than 75 percent of freshmen.  ***Although first-year students are not required to reside on campus, most do because who wants to miss out on the starting point for long-term friendships***, late night ice-cream runs, impromptu Netflix viewing or exposure to a wide range of diverse students as your new neighbors? Resident advisors reside on every floor to provide support to all students in their adjustment to college life. From your doorsteps, you can easily access everything else that makes college life complete: dining, Reitz Union activities, fitness programs and more.

\*     \*     \*

**A UNIVERSITY UNITED FOR A GREATER PURPOSE**

***At UF, our students utilize more than 200 research, service and education centers, bureaus and institutes***. With some of the most future-focused facilities led by some of the best minds in their fields, it's no wonder UF is consistently ranked among the nation's top universities. Rankings like second among Forbes "Best Value Public Colleges" (2016) and second in Kiplinger's "Best Values in Public Colleges" (2015) are a result of UF's commitment to provide the highest quality education at the best value.

\*      \*      \*



\*      \*      \*

18





67.     UF significantly enhances its value to students by offering a rich, communal social and academics experience.

68.     Plaintiff enrolled as a full-time student at UF during the Spring 2020 academic term, attending UF in-person rather than on-line.

69.     Plaintiff paid the full amount of tuition and fees charged by UF.

**B.      <u>UF's Terms and Agreement – The Contract</u>**

70.     Plaintiff received, reviewed and agreed to the following Terms and Agreement upon his registering to attend UF.  The Terms and Agreement state:

# TERMS AND AGREEMENTS

## AS A STUDENT AT THE UNIVERSITY OF FLORIDA, I ACKNOWLEDGE AND UNDERSTAND THAT:

· I consent to receive my IRS tax Form 1098-T electronically, now and in subsequent years, via online access to ONE.UF in lieu of a mailed copy. To receive a mailed copy, this consent may be revoked by submitting a signed and dated original completed IRS 1098-T Tuition Statement Paper Request Form to the Bursar.

· **UNIVERSITY OF FLORIDA FINANCIAL LIABILITY AGREEMENT**

I agree to pay all UF debts and charges pursuant to UF policies. I understand that the university is advancing value to me in the form of educational services and that my right to register is expressly conditioned upon my agreement to pay the costs of tuition, fees, and other charges and any additional costs when those charges become due. I understand the university notifies students of debts by UF email. It is my responsibility to view my charges in ONE.UF, or at the location designated by my academic program. I understand that past due student accounts will result in university registration and services being withheld in accordance with university regulations. Delinquent debts may be reported to a credit bureau and referred to collection agencies, or litigated. I agree to pay all costs of collecting unpaid charges, including a percentage based third-party collection fee up to 30%, reasonable attorney's fees, and court costs the university may incur in efforts of collecting my account. This agreement shall be construed in accordance with Florida law and any lawsuit to collect unpaid fees may be brought in the appropriate court sitting in Alachua County, Florida, regardless of my domicile at the time of bringing such suit.

· If I do not pay any amount of my course tuition and fees, or they are not deferred by the published deadline, I may be withdrawn with fee liability from **all** courses. If I am withdrawn, I no longer will be eligible to attend and participate in classes or other university activities. I also will not be able to register for any future term until my outstanding debt is satisfied.

· I will be held liable for course tuition and fees for all courses that are on my schedule as of the end of the drop/add period. This includes any adjustments made to my schedule after the drop/add period ends.

UF 000117

If I received federal financial aid and I complete 60 percent or less of the term prior to withdrawing, **I may be required to repay a substantial portion of my federal financial aid**, or if I enroll in modular courses and I drop one or all of the courses within the term, I may be required to repay a substantial portion of my federal financial aid. For more information, please read the What You Need to Know before You Go withdrawal policies page on the Registrar's website.

· Exit Counseling Requirement: Any student receiving student loan(s) and/or Federal TEACH Grant while attending UF must complete an Exit Counseling session(s) when he/she graduates, leaves school, or drops below half-time enrollment. This counseling is designed to assist students with understanding their rights and responsibilities as they apply to their student loan(s) and/or Federal TEACH Grant awards. Please note: Until the Exit Counseling requirement is satisfied, a hold will be placed on the UF student's account preventing the receipt of academic transcripts, diploma, and other university services. After Exit Counseling has been completed, the exit counseling hold will be removed from the student's record within 48 hours.

· In accordance with the TCPA (Telephone Consumer Protection Act), requiring certain entities to obtain consent to contact individuals on their cellular telephones, I authorize the University Florida and their respective agents and contractors to contact me regarding any past, current or future financial records at the current or any future number that I provide for my cellular phone or other wireless device using automated telephone dialing equipment or artificial or pre-recorded voice or text messages.

## LAST REVIEWED

05/01/2020: reviewed content

## RESOURCES

What You Need to Know before You Go

TCPA (Telephone Consumer Protection Act)

## CONTACTS

Bursar: (352) 392-0181

Ask Bursar Help

## STILL HAVE A QUESTION?

UF 000118

## Attachments

📄 IRS 1098-T Tuition Statement Paper Request Form

### Related Articles

📄 Past Due Accounts

📄 Third-Party Sponsor Invoicing

📄 Third-Party Sponsor Overview

📄 Waivers

📄 Non-Tuition Charges

📄 Billing of Students and Former Students



    

University of Florida
Gainesville, FL 32611
(352) 392-3261

UF 000119



https://www.fa.ufl.edu/directives/terms-and-agreements/

UF 000120

4/4

24

## VIII.   CLASS REPRESENTATION ALLEGATIONS

71.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

72.     Plaintiff brings this action on behalf of himself and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Classes:

**The Tuition Class:**

All people who paid tuition for or on behalf of students enrolled in classes at the Universities for the Spring 2020 semester but were denied live, in-person instruction and forced to use online distance learning platforms for the latter portion of that semester.

**The Fees Class:**

All people who paid fees for or on behalf of students enrolled in classes at the Universities for the Spring 2020 semester.

73.     Excluded from the Classes are Defendants, and any of their respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the judicial officers, and their immediate family members, and Court staff assigned to this case. Plaintiff reserves the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

74.     The members of the Classes are so numerous and geographically dispersed that individual joinder of all members is impracticable.  Plaintiff is informed and believes that there are thousands of members of the Classes, the precise number being unknown to Plaintiff, but such number being ascertainable from Defendants' records.  Members of the Classes may be notified

of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

**Commonality and Predominance: Fed. R. Civ. P. 23(a)(2)**

75.     This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Classes, including, without limitation:

(a)     Whether Defendants engaged in the conduct alleged herein;

(b)     Whether there is a difference in value between enrollment in an online distance learning program and enrollment in a live, on-campus instructional program;

(c)     Whether Defendants breached their contracts with Plaintiff and the other members of the Tuition Class by retaining the portion of their tuition representing the difference between the value of online distance learning and on-campus, in-person enrollment;

(d)     Whether Defendants were unjustly enriched by retaining tuition payments of Plaintiff and the Tuition Class representing the difference between the value of online distance learning and on-campus, in-person enrollment;

(e)     Whether Defendants breached their contracts with Plaintiff and the other members of the Fees Class by retaining fees without providing the services, benefits and/or programs the fees were contracted to cover;

(f)     Whether Defendants were unjustly enriched by retaining fees of Plaintiff and the other members of the Fees Class without providing the services, benefits and/or programs the fees were intended to cover;

(g)     Whether Defendants committed conversion as detailed herein against Plaintiff and the other members of the Tuition Class;

(h)      Whether Defendants committed conversion as detailed herein against Plaintiff and the other members of the Fees Class;

(i)       Whether Defendants violated the Takings Clause of the Fifth Amendment, through the Fourteenth Amendment as to Plaintiff and the other members of the Tuition Class;

(j)       Whether Defendants violated the Takings Clause of the Fifth Amendment, through the Fourteenth Amendment as to Plaintiff and the other members of the Fees Class;

(k)      Whether Defendants violated the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* as to Plaintiff and the other members of the Tuition Class;

(l)       Whether Defendants violated the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* as to Plaintiff and the other members of the Fees Class;

(m)      Whether certification of any or all of the classes proposed herein is appropriate under Fed. R. Civ. P. 23;

(n)      Whether Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and

(o)      The amount and nature of relief to be awarded to Plaintiff and the other members of the Classes.

**Typicality: Fed. R. Civ. P. 23(a)(3)**

76.      Plaintiff's claims are typical of the claims of other members of the Classes because, among other things, all such members were similarly situated and were comparably injured through Defendants' wrongful conduct as set forth herein.

**Adequacy: Fed. R. Civ. P. 23(a)(4)**

77.     Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of other members of the Classes he seeks to represent.  Plaintiff has retained counsel competent and experienced in complex litigation and Plaintiff intends to prosecute the action vigorously.  The interests of the Classes will be fairly and adequately protected by Plaintiff and his counsel.

**Superiority: Fed. R. Civ. P. 23(b)(3)**

78.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff and other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for members of the Classes to individually seek redress for Defendants' wrongful conduct.

79.     Even if members of the Classes could afford individual litigation, the Court system likely could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, comprehensive supervision by a single court, and finality of the litigation.

**Certification of Specific Issues: Fed. R. Civ. P. 23(c)(4)**

80.     To the extent that any described Classes herein do not meet the requirements of Rules 23(b)(2) or (b)(3), Plaintiff seeks the certification of issues that will drive the litigation toward resolution.

**Declaratory and Injunctive Relief: Fed. R. Civ. P. 23(b)(2)**

81.     Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the members of the Classes as a whole.

## IX.     IN RESPONSE TO THE COVID-19 PANDEMIC, DEFENDANTS' SEIZED PLAINTIFF'S AND THE MEMBERS OF THE CLASSES PROPERTY WITHOUT NOTICE OR DUE PROCESS

82.     When Defendants elected to seize Plaintiff's and the members of the Classes property, they did so without notice or due process.

83.     The Takings Clause of the Fifth Amendment, through the Fourteenth Amendment, prohibits states from taking private property for public use without just compensation.

84.     Core common law property rights that predate the Constitution are protected by the Takings Clause.

85.     For hundreds of years, the common law has recognized that there is a property right by an owner in funds held in an account managed by another.

86.     The common law rule is that when monies are paid in anticipation of receiving some service, but circumstances thereafter render it impossible for those services to be provided, the recipient is precluded from unjustly enriching themselves by seizing and retaining the proceeds.

87.     Based on these common law rules protected by the Constitution, Plaintiff and the Classes have a protected property right in all sums they paid to the Universities for which they received nothing, or significantly less than what they bargained for, in return.

88.     Defendants elected to seize Plaintiff's and the members of the Classes' property under the color of state law, without notice or due process, which failure to provide the same violates due process standards set forth in the Florida and United States Constitutions.

89.     Defendants are obligated to uphold the Florida and United States Constitutions.

90.     No statute, rule, or practice could authorize Defendants to withhold that property from Plaintiff and the Classes without violating the Takings Clause of the Fifth Amendment.

91.     Defendants' conduct violated the Florida Constitution, Article X, Section 6(a) and the United States Constitution's Fifth and Fourteenth Amendments.

92.     Plaintiff's and members of the Classes' property remains in Defendants' possession and can readily be returned upon Defendants directing the Universities to do so.

93.     Plaintiff has never made a knowing and voluntary waiver of his constitutional rights to be paid just compensation for the taking of his property rights in those funds.

94.     Consequently, Defendants, under the color of state law, have seized and retained property that is beyond their statutory and constitutional authority.  These actions are *ultra vires* and unconstitutional.

## X.     DEFENDANTS' PRACTICE IS UNETHICAL AND VIOLATED ESTABLISHED ETHICAL STANDARDS

95.     Defendants' practice of failing to provide reimbursements for tuition despite the monetary difference between on-line learning and in-person learning and the reduced benefits associated with the mandatory fees collected by the Universities, as alleged herein, violated generally accepted ethical principles of business conduct.

96.     The basis for the allegation that it was unethical to engage in the above practices comes, in part, from established ethical principles recognized by the American Marketing Association.

## XI.     AMA STATEMENT OF ETHICS

97.     The American Marketing Association ("AMA") "commits itself to promoting the highest standard of professional ethical norms and values. . . ."[5]   As such, it has published its "Statement of Ethics." *Id.*   AMA states that "marketers are expected to embrace the highest professional ethical norms and the ethical values implied by our responsibility toward multiple stakeholders (*e.g.*, customers . . .)." *Id.*   Thus, the Statement of Ethics contains "Ethical Norms," which "are established standards of conduct that are expected and maintained by society and/or professional organizations." *Id.*

98.     The AMA's Ethical Norms state that marketers must "consciously avoid [] harmful actions and omissions," "striv[e] for good faith and fair dealing," "avoid [] deception in . . . pricing, communication, and delivery of distribution," and affirm "core values" of honesty, . . . fairness [and] transparency." *Id.*

99.     By not providing appropriate reimbursements to students despite offering a on-line learning (which costs substantially less money and provides a diminished educational experience) Defendants violated these Ethical Norms because, among other reasons, they did not strive (nor achieve) good faith and fair dealing and did not affirm the core values of honesty, fairness and transparency.

---

[5]                                        *See*                                https://www.ama.org/codes-of-conduct/#:~:text=Preamble,practitioners%2C%20academics%20and%20students).&text=Values%20also%20serve%20as%20the,and%20the%20actions%20of%20others (last visited July 29, 2020).

100.    The AMA has also published "Ethical Values," which "represent the collective conception of what communities find desirable, important and morally proper." *Id.*  These Ethical Values include honesty and "[h]onoring our explicit and implicit commitments and promises."

101.    By not providing reimbursements to students despite offering a greatly diminished educational experience compared to what they promised, Defendants violated these Ethical Values, because, among other reasons, they did not honor their explicit and implicit commitments and promises.

### FOR A FIRST COLLECTIVE CAUSE OF ACTION
### BREACH OF CONTRACT

### (Plaintiff and Other Members of the Tuition Class)

102.    Plaintiff incorporates by reference paragraphs 1 to 101.

103.    Plaintiff brings this count on behalf of himself and other members of the Tuition Class.

104.    Plaintiff and the other members of the Tuition Class entered into contracts with Defendants which provided that Plaintiff and other members of the Tuition Class would pay tuition for or on behalf of students and, in exchange, Defendants would enroll such students and admit them to the respective Universities; granting them the full rights and privileges of student status, including but not limited to access to campus facilities, access to campus activities, and live, in-person instruction in a physical classroom.

105.    Defendants define registration as: "1. formal enrollment in one or more credit courses approved and scheduled by the university; and 2. tuition and fee payments, or other appropriate arrangements for tuition and fee payment (deferment or third-party billing) for the courses in which the student is enrolled as of the end of the drop/add period."  *See* UF-3.037 Regulations of the University of Florida.

106.    The rights and privileges of student status that comprise the contractual terms are also set forth by Defendants through its "Terms and Agreement", website, academic catalogs, student handbooks, correspondence, marketing materials and other circulars, bulletins, and publications.

107.    These rights and privileges form the basis of the bargain on which prospective students agree to accept Defendants' offer of enrollment in exchange for the payment of tuition and fees.

108.    One such right is the ability to be physically present on campus, and fully enjoy the facilities, services, and opportunities provided thereon, including the campus' location and surrounding opportunities at each of the respective Universities.

109.    Defendants do not deny that the physical location of its campuses is a main benefit of enrollment that attracts many students to the Universities.

110.    By way of example, UF's website and recruitment brochures are the primary means through which Defendants target prospective new students and attempt to influence such students to apply for enrollment at UF as opposed to other institutions of higher learning.

111.    Through these publications, Defendants market to and enrolls students in two separate and distinct products.

112.    Defendants specifically market certain classes and degree programs as being offered on a fully online basis.

113.    Indeed, Defendants dedicate an entire section of the UF website to these programs, known as "UF Online" which can be accessed at https://ufonline.ufl.edu/.

114.    Conversely, Defendants' publications with respect to non-online classes are full of references to the on-campus experience, including numerous references to student activities; campus amenities; campus diversity, campus location, and the like.

115.    Upon information and belief, there were no references or disclaimers in any of Defendants' websites, circulars, bulletins, publications, brochures, or other advertisements prior to January 1, 2020, that even referenced the possibility of in-person classes being changed to fully online classes at Defendants' discretion or for any other reason whatsoever after the start of a given term.

116.    In fact, it is clear that, prior to the COVID-19 interruption, Defendants had no plans whatsoever to offer its in-person classes via an online delivery model.

117.    Those prospective students who were interested in enrolling at the Universities after consuming the marketing materials of each prospective Florida State university listed herein were invited to complete applications, and some were selected for and offered admission.

118.    Defendants have failed to fully provide those services and have otherwise not performed under the contract as set forth above.

119.    Plaintiff and members of the Tuition Class accepted Defendants' offer for live in-person on-campus education and paid valuable consideration in exchange.

120.    However, after accepting such consideration from Plaintiff and other members of the Tuition Class, Defendants provided a materially different product, which deprived Plaintiff and other members of the Tuition Class of the benefit of the bargain for which they had already paid.

121.    Defendants retained tuition monies paid by Plaintiff and other members of the Tuition Class, without providing them the full benefit of their bargain.

122.     Plaintiff and other members of the Tuition Class have suffered damage as a direct and proximate result of Defendants' breach amounting to the difference in the fair market value of the services and access for which they contracted, and the services and access which they actually received.

123.     This cause of action does not seek to allege "academic malpractice."

124.     As a direct and proximate result of Defendants' breach, Plaintiff and other members of the Tuition Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include disgorgement of the difference between the fair market value of the online learning provided versus the fair market value of the live, in-person instruction in a physical classroom on a physical campus with all the attendant benefits for which they contracted.

## FOR A SECOND COLLECTIVE CAUSE OF ACTION
## UNJUST ENRICHMENT

### (Plaintiff and Other Members of the Tuition Class)

125.     Plaintiff incorporates by reference paragraphs 1 to 101.

126.     Plaintiff brings this count on behalf of himself and other members of the Tuition Class.

127.     This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply, the contract-based claim set forth in the First Cause of Action above.

128.     Plaintiff and other members of the Tuition Class paid substantial tuition for live, in-person instruction in physical classrooms on a physical campus with all the attendant benefits.

129.     Plaintiff and other members of the Tuition Class conferred a benefit on Defendants when they paid this tuition.

130.     Defendants have realized this benefit by accepting such payment.

35

131.     However, Plaintiff and other members of the Tuition Class did not receive the full benefit of their bargain.

132.     Instead, Plaintiff and other members of the Tuition Class conferred this benefit on Defendants in expectation of receiving one product, *i.e.*, live in-person instruction in a physical classroom along with the on-campus experience of campus life as described more fully above, but they were provided with a materially different product carrying a different fair market value, *i.e.*, online instruction devoid of the on-campus experience, access, and services.

133.     Defendants have retained this benefit, even though Defendants have failed to provide the services for which the tuition was collected, making Defendants' retention unjust under the circumstances.

134.     It is significantly cheaper for Defendants to provide the online product than the on-campus product.

135.     As a result of closing campus and moving classes online, Defendants saved significant sums of money in the way of reduced utility costs, reduced maintenance and staffing requirements, reduced or eliminated hours for hourly employees, reduced or eliminated hours for paid work study students, and otherwise.

136.     Simply put, it is significantly cheaper to operate a remote, on-line campus than a fully open physical campus.  But even if it was not, it is not the product that students were offered and not the product the students expected to receive.

137.     Equity and good conscience require that Defendants return a portion of the monies paid in tuition to Plaintiff and other members of the Tuition Class.

138.     This cause of action does not seek to allege "academic malpractice."

139.    Defendants should be required to disgorge this unjust enrichment to the extent that Defendants have retained more than the fair market value for the product that Defendants was able to provide.

## FOR A THIRD COLLECTIVE CAUSE OF ACTION
## BREACH OF CONTRACT

### (Plaintiff and Other Members of the Fees Class)

140.    Plaintiff incorporates by reference paragraphs 1 to 101.

141.    Plaintiff brings this count on behalf of himself and other members of the Fees Class.

142.    In addition to tuition, Defendants charge a number of mandatory fees.

143.    In its publications and, particularly on its websites, Defendants specifically describe the nature and purpose of each fee.

144.    Some fees apply broadly to all or certain groups of students, while other fees are program or course based.

145.    Such fees are set forth not only in amount but also in description and purpose through the various academic catalogs and on the Universities' websites.

146.    As such, it is axiomatic that the monies Plaintiff and other members of the Fees Class paid towards these fees were intended by both the students and Defendants to cover the services, access, benefits and programs for which the fees were described and billed.

147.    For example, UF describes certain fees as follows:

**Activity and Service Fee** -- All students must pay an activity and service fee that is assessed on a per credit-hour or semiannual basis.

**Athletic Fee** -- All students must pay an athletic fee that is assessed on a per credit-hour or semiannual basis. Halftime graduate research and teaching assistants enrolled for eight (8) or more credit hours during the Fall or Spring Semester and all other students enrolled for nine (9) or more credit hours are eligible to purchase football tickets at the student rate.

**Health Fee** -- All students must pay a health fee that is assessed on a per credit-hour or semiannual basis. The health fee is not part of any health insurance a student may purchase.

**Material and Supply and Equipment Use Fee** -- Material and supply fees are assessed for certain courses to offset the cost of materials or supply items consumed in the course of instruction. A list of approved courses and fees is published in the Schedule of Courses each semester.

**Off-Campus Educational Activitie**s -- The president or the president's designee will establish fees for off-campus course offerings when the location results in specific identifiable increased costs to the university. These fees will be in addition to the regular tuition and fees charged to students enrolling in these courses on campus. The additional fees charged are for the purpose of recovering the increased costs resulting from off campus vis-à-vis on campus offerings. As used herein, off campus refers to locations other than main campus, branch and centers.

**Technology Fee**-- All students must pay a technology fee that is assessed on a per credit-hour or semiannual basis.

**Transportation Access Fee** -- All students must pay a transportation access fee that is assessed on a per credit-hour or semiannual basis.

148.    As such, in accepting these terms and paying these fees, a contract was formed between Plaintiff, including the Fees Class, and Defendants, which provided that Plaintiff and other members of the Fees Class would pay these fees for or on behalf of themselves and, in exchange, Defendants would provide or make available the services, access, benefits and/or programs related to those fees, as promised.

149.    It is undisputed that Defendants did not provide student activities, access to recreational facilities, access to campus-based information technology resources, or access to any of the Health departments for a portion of the Spring 2020 semester.

150.    Plaintiff and other members of the Fees Class fulfilled their end of the bargain when they paid these fees for the Spring 2020 semester, either by paying out of pocket or by using student loan financing, or otherwise.

151.    However, Defendants breached the contract with Plaintiff and other members of the Fees Class by moving all classes for the Spring 2020 semester to online distance learning platforms, constructively evicting students from campus, closing most campus buildings and facilities, and cancelling most student activities.

152.    By retaining fees paid by Plaintiff and other members of the Fees Class, without providing them the full benefit of their bargain, Defendants have failed to perform their contractual obligations.

153.    Plaintiff and other members of the Fees Class have suffered damage as a direct and proximate result of Defendants' breach, namely being deprived of the value of the services, access, benefits and/or programs the fees were intended to cover.

154.    As a direct and proximate result of Defendants' breach, Plaintiff and other members of the Fees Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include disgorgement of the *pro-rata* amount of fees that were collected but for which services were not provided.

### FOR A FOURTH COLLECTIVE CAUSE OF ACTION
### UNJUST ENRICHMENT

### (Plaintiff and Other Members of the Fees Class)

155.    Plaintiff incorporates by reference paragraphs 1 to 101.

156.    Plaintiff brings this count on behalf of himself and other members of the Fees Class.

157.    This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply, the contract-based claim set forth in the Third Cause of Action above.

158.    Defendants have received a benefit at the expense of Plaintiff and other members of the Fees Class to which they are not entitled.

159.    Plaintiff and other members of the Fees Class paid substantial student fees for on-campus services, access, benefits and/or programs and did not receive the full benefit of the bargain.

160.    Plaintiff and other members of the Fees Class conferred this benefit on Defendants when they paid the fees.

161.    Defendants realized this benefit by accepting such payment.

162.    Defendants have retained this benefit, even though Defendants have failed to provide the services, access, benefits and/or programs for which the fees were collected, making Defendants' retention unjust under the circumstances.

163.    Equity and good conscience require that Defendants return a portion of the monies paid in fees to Plaintiff and other members of the Fees Class.

164.    Defendants should be required to disgorge this unjust enrichment to the extent that Defendants have retained more than the fair market value for the product that Defendants were able to provide.

### FOR A FIFTH COLLECTIVE CAUSE OF ACTION
### CONVERSION

### (Plaintiff and Other Members of the Tuition Class)

165.    Plaintiff incorporates by reference paragraphs 1 to 101.

166.    Plaintiff brings this count on behalf of himself and other members of the Tuition Class.

167.    The two key elements of conversion are (1) Plaintiff's legal ownership or an immediate superior right of possession to a specific identifiable thing, and (2) Defendants' unauthorized dominion over the thing in question or interference with it, to the exclusion of Plaintiff's right.

168.     Plaintiff and members of the Tuition Class have an identifiable legal ownership to the right and services of an in-person, on-campus educational experience and paid tuition funds for the same.

169.     As set forth above, Defendants have not provided those services or access to the exclusion of Plaintiff's and other members of the Tuition Class's rights.

170.     As set forth above, Plaintiff and other members of the Tuition Class have not, to date, received from Defendants a proper reimbursement for tuition paid to Defendants for the 2020 Spring semester.

171.     Defendants have received and retained possession of Plaintiff's and other members of the Tuition Class's full payments for tuition for the 2020 Spring semester.

172.     Defendants' continued possession of the full payments for the 2020 Spring semester tuition is adverse and in derogation of Plaintiff's and the other members of Tuition Class's entitlement to such funds.

173.     Defendants refuse to remit Plaintiff's and the other members of the Tuition Class's reimbursement for tuition paid for the 2020 Spring semester.

174.     Defendants have therefore converted and continue to convert Plaintiff's and the other members of the Tuition Class's 2020 Spring semester tuition.

**FOR A SIXTH COLLECTIVE CAUSE OF ACTION**
**CONVERSION**

**(Plaintiff and Other Members of the Fees Class)**

175.     Plaintiff incorporates by reference paragraphs 1 to 101.

176.     Plaintiff brings this count on behalf of himself and other members of the Fees Class.

177.     The two key elements of conversion are (1) Plaintiff's legal ownership or an immediate superior right of possession to a specific identifiable thing, and (2) Defendants'

unauthorized dominion over the thing in question or interference with it, to the exclusion of Plaintiff's right.

178.    Plaintiff and other members of the Fees Class have an identifiable legal ownership to the services, access, benefits and/or programs paid for through their fees.

179.    As set forth above, Defendants have not provided or made available those services, benefits, programs and/or access thereto, to the exclusion of Plaintiff's and other members of the Fee Class's rights.

180.    As set forth above, Plaintiff and other members of the Fees Class have not, to date, received from Defendants a proper reimbursement for fees paid to Defendants for the 2020 Spring semester.

181.    Defendants have received and retained possession of Plaintiff's and other members of the Fees Class's payments for fees for the 2020 Spring semester.

182.    Defendants' continued possession of payments for 2020 Spring semester fees is adverse and in derogation of Plaintiff's and other members of the Fees Class's entitlement to such funds.

183.    Defendants refuse to remit to Plaintiff and other members of the Fees Class a reimbursement for fees paid for the 2020 Spring semester.

184.    Defendants have therefore converted and continue to convert Plaintiff's and other members of the Fees Class's 2020 Spring semester fees.

### FOR A SEVENTH COLLECTIVE CAUSE OF ACTION
### VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES

#### (Plaintiff and Other Members of the Tuition Class)

185.    Plaintiff incorporates by reference paragraphs 1 to 101.

186.    Plaintiff brings this count on behalf of himself and other members of the Tuition Class.

187.    Florida Deceptive and Unfair Trade Practices Act is found at Fla. Stat. § 501.201 *et seq.*

188.    Fla. Stat. § 501.211(2) provides in pertinent part that:

"(2) In any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs as provided in s. 501.2105."

189.    A consumer claim for damages under the Florida Deceptive and Unfair Trade Practices Act has three elements: (1) a deceptive act **or _unfair practice_**; (2) causation; and (3) actual damages.

190.    An "unfair practice" is one that offends established public policy and one that is immoral, unethical, *oppressive*, unscrupulous or *substantially injurious to consumers*.

191.    Whether particular conduct constitutes such an unfair or deceptive trade practice is a question of fact.

192.    A claim under the Florida Deceptive and Unfair Trade Practices Act is not defined by the express terms of a contract, but instead encompasses *unfair* and deceptive practices arising out of business relationships.

193.    The 2001 amendments to the Florida Deceptive and Unfair Trade Practices Act broadened the scope of the Act "to allow any person or entity who has suffered a loss as a result of unfair or deceptive acts or practices to commence a private action for actual damages."

194.    Plaintiff and other members of the Tuition Class are consumers who have paid substantial tuition and fees to attend in-person, hands-on curriculum at Defendants' Universities for the Spring 2020 semester.

195.    Defendants' efforts to sell its services to prospective students, which included Plaintiff and other members of the Tuition Class, were "consumer-oriented."

196.    As part of their marketing practices and recruitment efforts, as described above, Defendants made numerous statements, representations and omissions to the public (including Plaintiff and members of the Tuition Class) with respect to the in-person educational opportunity and on-campus experience that students who enrolled at the Defendants' Universities would receive.  Such statements, representations and omissions, which were uniform and identical in nature, were intended to induce potential students to enroll at the University for the Spring 2020 semester.

197.    With the reasonable expectation that students who enrolled at the Universities would receive in-person academic instruction with an on-campus experience for the entire 2020 Spring semester, Plaintiff and other members of the Tuition Class paid tuition to Defendants.

198.    However, students did not receive an in-person academic instruction with on-campus experience, access and services for the entire 2020 Spring semester.  As a result, Plaintiff and other members of the Tuition Class were proximately caused to pay inflated tuition because they were deprived of in-person academic instruction and an on-campus experience, access and services for the Spring 2020 semester.

199.    Therefore, the aforementioned statements, representations and omissions made by Defendants (in turn, each university named herein) were objectively false, misleading and deceptive to Plaintiff and the other Tuition Class Members, as well as the public at large.

200.    Defendants' above-alleged actions constitute unfair business practices since the actions were deceptive and injurious to Plaintiff and other members of the Tuition Class because

students enrolled for the Spring 2020 term did not benefit from on-campus academic instruction and a unique on-campus experience during the entire spring term.

201.    In fact, Plaintiff and other students were not permitted to receive and benefit from on-campus academic instruction and a unique on-campus experience during the entire Spring 2020 semester.

202.    Defendants' acts and practices were designed to lead potential students, and the public, to believe that if students enrolled at the Universities then they would be entitled to receive in-class instruction and a unique campus experience for the entire Spring 2020 semester.

203.    Plaintiff and other members of the other Tuition Class Members were deceived and injured because students did not receive in-class instruction and a unique campus experience for the entire Spring 2020 semester.

204.    As a result of Defendants' foregoing violations of the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.201 *et seq*.), Defendants have directly and proximately caused damage to Plaintiff and other members of the Tuition Class and are entitled to recover actual damages in an amount to be determined at trial, and an award of reasonable attorney's fees, expenses, costs and disbursements.

## FOR AN EIGHTH COLLECTIVE CAUSE OF ACTION
## VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES

### (Plaintiff and Other Members of the Fees Class)

205.    Plaintiff incorporates by reference paragraphs 1 to 101.

206.    Plaintiff brings this count on behalf of himself and other members of the Fees Class.

207.    The Florida Deceptive and Unfair Trade Practices Act is found at Fla. Stat. § 501.201 *et seq.*

208.    Fla. Stat. § 501.211(2) provides in pertinent part that:

"(2) In any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs as provided in s. 501.2105."

209.   A consumer claim for damages under the Florida Deceptive and Unfair Trade Practices Act has three elements: (1) a deceptive act **or _unfair practice_**; (2) causation; and (3) actual damages.

210.   An "unfair practice" is one that offends established public policy and one that is immoral, unethical, _oppressive_, unscrupulous or _substantially injurious to consumers_.

211.   Whether particular conduct constitutes such an unfair or deceptive trade practice is a question of fact.

212.   A claim under the Florida Deceptive and Unfair Trade Practices Act is not defined by the express terms of a contract, but instead encompasses unfair and deceptive practices arising out of business relationships.

213.   The 2001 amendments to the Florida Deceptive and Unfair Trade Practices Act broadened the scope of the Act "to allow any person or entity who has suffered a loss as a result of unfair or deceptive acts or practices to commence a private action for actual damages."

214.   Plaintiff and other members of the Fees Class were required to pay certain fees as a condition to student enrollment at the Universities for the Spring 2020 semester, including, but not limited to, a Technology Fee, Student Activity Fee, and a Health and Related Services Fee.

215.   As discussed above, Defendants made statements, representations and omissions to the public, including Plaintiff and other members of the Fees Class, with respect to such fees.

216.   These statements, representations and omissions, which were uniform and identical in nature, were intended to induce potential students, including Plaintiff and members of the Fees

Class, to enroll at the Universities and pay or cause to have paid mandatory fees for the Spring 2020 semester.

217.    With the reasonable expectation that students who enrolled at the Universities would be entitled to receive services, programs and/or benefits for which fees were charged for the entire Spring 2020 semester, Plaintiff and other members of the Fees Class agreed to pay such fees.

218.    However, students did not receive the services, programs and/or benefits for which fees were charged for the entire Spring 2020 semester.  As a result, Plaintiff and other members of the Fees class were proximately caused to overpay such fees because the related services, programs and/or benefits were not available to students for the entire Spring 2020 semester.

219.    Therefore, the aforementioned statements, representations and omissions made by Defendants (in turn, each university named herein) were objectively false, misleading and deceptive to Plaintiff and the other Fee Members, as well as the public at large.

220.    Defendants' above-alleged actions constitute unfair business practices since the actions were deceptive and injurious to Plaintiff and other members of the Fees Class because students enrolled at the Universities did not receive services, programs and/or benefits for which fees were paid for the entire Spring 2020 semester.

221.    Defendants' acts and practices were designed to lead potential students, and the public, to believe that if students enrolled at the Universities and paid the mandatory fees then they would be entitled receive the services, programs and/or benefits for which such fees were charged and paid for the entire Spring 2020 semester.

222.    Plaintiff and the other Fees Class members were deceived and injured because students were not entitled to receive the services, programs and/or benefits for which the mandatory fees were charged and paid for the entire Spring 2020 semester.

223.    As a result of Defendants' foregoing violations of the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.201 *et seq*.), Defendants have directly and proximately caused damage to Plaintiff and other members of the Fees Class and are entitled to recover actual damages in an amount to be determined at trial, and an award of reasonable attorney's fees, expenses, costs and disbursements.

## FOR AN NINTH COLLECTIVE CAUSE OF ACTION
## VIOLATION OF THE TAKINGS CLAUSE

### (Plaintiff and Other Members of the Tuition Class)

224.    Plaintiff incorporates by reference paragraphs 1 to 101.

225.    As set forth above, Defendants seized Plaintiff's and the members of the Tuition Class's property and did so without notice or due process.

226.    The Takings Clause of the Fifth Amendment, through the Fourteenth Amendment, of the United States Constitution prohibits states from taking private property for public use without just compensation.

227.    Defendants operate state agencies under color of state law.

228.    Core common law property rights that predate the Constitution are protected by the Takings Clause.

229.    For hundreds of years, the common law has recognized that there is a property right by an owner in funds held in an account managed by another.

230.    The common law rule is that when monies are paid in anticipation of receiving some service, but circumstances thereafter render it impossible for those services to be provided,

the recipient is precluded from unjustly enriching themselves by seizing and retaining the proceeds.

231.     Based on these common law rules protected by the Constitution, Plaintiff and the Tuition Class have a protected property right in all tuition they paid to the Universities for which they received nothing, or significantly less than what they bargained for, in return.

232.     Defendants elected to seize Plaintiff's and the members of the Tuition Class's property under the color of state law, without notice or due process, which failure to provide the same violates due process standards set forth in the United States Constitution and is a violation of 42 U.S.C. Sec. 1983.

233.     Defendants are obligated to uphold the laws of the United States.

234.     No statute, rule, or practice could authorize Defendants to withhold that property from Plaintiff and the Tuition Class without violating the Takings Clause of the Fifth Amendment and 42 U.S.C Sec. 1983.

235.     Defendants' conduct violated the United States Constitution's Fifth and Fourteenth Amendments and 42 U.S.C. Sec. 1983.

236.     The property of Plaintiff and members of the Tuition Class remains in Defendants' possession and can readily be returned upon Defendants directing the Universities to do so.

237.     Plaintiff has never made a knowing and voluntary waiver of his constitutional rights to be paid just compensation for the taking of his property rights in those funds.

238.     Consequently, Defendants, under the color of state law, have seized and retained property that is beyond their statutory and constitutional authority.  These actions are *ultra vires* and unconstitutional.

239.     As a result of Defendants' foregoing violations of the laws of the United States, Defendants are liable to Plaintiff and the members of the Tuition Class.

240.     In addition, Defendants are liable to Plaintiff and the members of the Tuition Class for attorneys' fees under 42 U.S.C. Sec. 1988.

## FOR AN TENTH COLLECTIVE CAUSE OF ACTION
## VIOLATION OF THE TAKINGS CLAUSE

### (Plaintiff and Other Members of the Fees Class)

241.     Plaintiff incorporates by reference paragraphs 1 to 101.

242.     As set forth above, Defendants seized Plaintiff's and the members of the Fee Class's property and did so without notice or due process.

243.     The Takings Clause of the Fifth Amendment, through the Fourteenth Amendment, of the United States Constitution prohibits states from taking private property for public use without just compensation.

244.     Defendants operate state agencies under color of state law.

245.     Core common law property rights that predate the Constitution are protected by the Takings Clause.

246.     For hundreds of years, the common law has recognized that there is a property right by an owner in funds held in an account managed by another.

247.     The common law rule is that when monies are paid in anticipation of receiving some service, but circumstances thereafter render it impossible for those services to be provided, the recipient is precluded from unjustly enriching themselves by seizing and retaining the proceeds.

248.     Based on these common law rules protected by the Constitution, Plaintiff and the Fees Class have a protected property right in all the fees they paid to the Universities for which they received nothing, or significantly less than what they bargained for, in return.

249.     Defendants elected to seize Plaintiff's and the members of the Fee Class's property under the color of state law, without notice or due process, which failure to provide the same violates due process standards set forth in the United States Constitution and is a violation of 42 U.S.C. Sec. 1983.

250.     Defendants are obligated to uphold the laws of the United States.

251.     No statute, rule, or practice could authorize Defendants to withhold that property from Plaintiff and the Fees Class without violating the Takings Clause of the Fifth Amendment and 42 U.S.C Sec. 1983.

252.     Defendants' conduct violated the United States Constitution's Fifth and Fourteenth Amendments and 42 U.S.C. Sec. 1983.

253.     The property of Plaintiff and members of the Fee Class remains in Defendants' possession and can readily be returned upon Defendants directing the Universities to do so.

254.     Plaintiff has never made a knowing and voluntary waiver of his constitutional rights to be paid just compensation for the taking of his property rights in those funds.

255.     Consequently, Defendants, under the color of state law, have seized and retained property that is beyond their statutory and constitutional authority.  These actions are *ultra vires* and unconstitutional.

256.     As a result of Defendants' foregoing violations of the laws of the United States, Defendants are liable to Plaintiff and the members of the Fee Class.

257.    In addition, Defendants are liable to Plaintiff and the members of the Fee Class for attorneys' fees under 42 U.S.C. Sec. 1988.

## XII.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

(A)    Certifying the Classes as proposed herein,

(B)    Designating Plaintiff as Class representative, and appointing Gainey McKenna & Egleston as Class Counsel;

(C)    Declaring that Defendants are financially responsible for notifying the Class members of the pendency of this action;

(D)    Declaring that Defendants have wrongfully kept monies paid for tuition and fees;

(E)    Requiring that Defendants disgorge amounts wrongfully obtained for tuition and fees;

(F)    Awarding injunctive relief as permitted by law or equity, including enjoining Defendants from retaining the pro-rated, unused monies paid for tuition and fees;

(G)    Scheduling a trial by jury in this action;

(H)    Awarding Plaintiff's reasonable attorney's fees, costs and expenses, as permitted by law;

(I)    Awarding pre and post-judgment interest on any amounts awarded, as permitted by law; and

(J)    Awarding such other and further relief as may be just and proper.

## XIII.   <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 31, 2020

**SHEPPARD, WHITE, KACHERGUS, & DEMAGGIO, P.A.**

By: *<u>/s/Bryan DeMaggio</u>*
    Bryan DeMaggio
215 Washington Street
Jacksonville, FL 32202
Tel: (904) 356-9661
Fax: (904) 356-9667
Email: <u>sheplaw@sheppardwhite.com</u>

**GAINEY McKENNA & EGLESTON**
Thomas J. McKenna
Gregory M. Egleston
501 Fifth Avenue, 19th Floor
New York, NY 10017
Tel.: (212) 983-1300
Fax: (212) 983-0383
Email: <u>tjmckenna@gme-law.com</u>
Email: <u>gegleston@gme-law.com</u>

*Attorneys for Plaintiff*