## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA

DYLAN EGLESTON, Individually and
on Behalf Of All Others Similarly Situated,

                Plaintiff,        Case No. 1:20-cv-106-AW/GRJ
                                          **Dispositive Motion**

v.

UNIVERSITY OF FLORIDA BOARD
OF TRUSTEES, AS THE PUBLIC BODY
CORPORATE OF UNIVERSITY OF
FLORIDA, and FLORIDA BOARD OF
GOVERNORS FOUNDATION, INC.,

                Defendants.
_____/

## THE UNIVERSITY OF FLORIDA BOARD OF TRUSTEES' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT WITH PREJUDICE AND INCORPORATED MEMORANDUM OF LAW

Defendant, the University of Florida Board of Trustees ("UFBOT"), pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby moves this Court to dismiss with prejudice Plaintiff's Amended Class Action Complaint (Doc. 21)(the "FAC").

## INTRODUCTION AND FAC OVERVIEW

In this case, putative class action named plaintiff Egleston ("Egleston" or "Plaintiff") continues to assert claims for breach of implied contract and unjust enrichment against UFBOT, claiming that because UFBOT converted to an online-learning format after the mid-point of the Spring 2020 semester as a result of the

COVID-19 public health emergency,[1] he was "deprived of the benefits of on-campus learning" and did not get the full value and benefits expected for the tuition and fees he paid for the semester.   FAC ¶¶ 2, 12-16, 18-20, 42, 51-57, 61-62.[2]   Notably, Plaintiff does not allege he was deprived of his earned credits or his degree.   Plaintiff contends he agreed to pay for and receive in-person education rather than online education, but what he identifies as "UF's Terms and Agreement –The Contract" (FAC ¶70) is devoid of any references to in-person education.   FAC ¶¶64, 70.

In addition to dividing all claims in the FAC between tuition and fees, the Plaintiff attempts to restyle his breach of contract and unjust enrichment claims as conversion, Florida Deceptive and Unfair Trade Practices (Fla. Stat. §501.201 et. seq.)("FDUTPA"), and constitutional 42 U.S.C. §1983 claims.   In his conversion claims, Plaintiff alleges he has legal ownership to the right and services of an in-person, on campus educational experience, but was denied reimbursement.   In his FDUTPA claims, Plaintiff alleges he was deceived and suffered actual damage when he did not receive in-class instruction and an in-person campus experience at UF.   In

---

[1] It is an indisputable matter of public knowledge that UF discontinued on-campus instruction in March 2020 for the Spring to minimize the health and safety risks to students, faculty, staff and their communities due to COVID-19.   Fed. R. Evid. 201(b)(2); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[2] UFBOT denies the accuracy of Plaintiff's allegations.   Even if the non-conclusory allegations in the FAC are presumed true for purposes of this Motion, no viable claims for relief are stated.

his §1983 claims, Plaintiff alleges he has a constitutionally protected property interest in a pro rata amount of Spring 2020 tuition/fees that was taken without due process.  As demonstrated below, the FAC should be dismissed, with prejudice.

First, UFBOT is a public instrumentality and arm of the State of Florida. §1001.72(2), Fla. Stat.  UFBOT is, therefore, entitled to sovereign immunity[3] absent an unequivocal waiver or exception, such as an express written contract or Florida's limited waiver that is codified in Section 768.28, Florida Statutes.  Neither of these exceptions apply to **any** of the claims in the FAC.  UFBOT is also not a "person" that can be sued under §1983 and Congress did not abrogate UFBOT's Eleventh Amendment immunity for that claim.

Second, Plaintiff fails to attach to the FAC or otherwise show the existence of any express written contract between UFBOT and Plaintiff for the payment of student tuition and fees in exchange for the in-person instruction and on-campus activities Plaintiff allegedly impliedly bargained for by enrolling in UF.  Most notably, Plaintiff does not allege or demonstrate an express written agreement that mandatory tuition and fees would be apportioned by in-person versus on-line use. However, even if Plaintiff's allegations were sufficient to create an implied contract

---

[3] It is inherent in the nature of sovereignty for the sovereign not to be amenable to the suit of an individual without its consent.  *See e.g*., The Federalist No. 81, at 487(C. Rossiter ed. 1961) (Alexander Hamilton); *Franchise Tax Board of California v. Hyatt*, 139 S.Ct. 1485, 1493 (2019) ("An integral component of the States' sovereignty was their immunity from private suits.")(citations omitted).

for in-person instruction and on-campus activities, this would not waive sovereign immunity.  Instead of there being any contract, authority to establish the tuition and fees charged to students rests exclusively with the Legislature, which prescribes the mandatory tuition and fees charged.  §1001.705(3)(c) and §1009.24, Fla. Stat.

Third, the statutes related to student tuition and fees do not provide a private cause of action for students who are dissatisfied with what they received in exchange for the tuition and fees charged by UFBOT, and these statutes also do not create a right to the refunds Plaintiff claims.

Fourth, apart from the applicable immunity doctrines, Plaintiff fails to state a cause of action for conversion, FDUPTA, or a violation of §1983 based on the Takings Clause of the Fifth Amendment.  Plaintiff's takings claims are not viable because Florida law does not recognize him to have a constitutionally protected property interest, and because retention of Plaintiff's voluntarily paid tuition and fee payments to UFBOT does not qualify as a taking and is not actionable under §1983.

## MEMORANDUM OF LAW

## I.  Legal Standard

This case is before the Court on the basis of diversity jurisdiction, pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d), and federal question jurisdiction, pursuant to 28 U.S.C. §1331 and §1343(a)(3).  Plaintiff also claims supplemental jurisdiction over the related state law tort claims pursuant to 28 U.S.C. §1367.

Substantive issues for all non-federal claims are governed by Florida law[4]. *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1515 (11th Cir. 1997).  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "provide the grounds of his entitlement to relief," and factual allegations must be sufficient "to state a claim for relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  Further, legal conclusions must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Mere conclusory statements "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.  Nor do courts need to accept as true a "legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.  Where plaintiffs have "not nudged [their] claims across the line from conceivable to plausible, [their] complaint must be dismissed." *Twombl*y, 550 U.S. at 570.

## II.  Sovereign Immunity Bars Plaintiff's Breach of Contract Claims

"The doctrine of sovereign immunity, which provides that a sovereign cannot be sued without its permission, … was a part of the English common law when the State of Florida was founded and has been adopted and codified by the Florida Legislature." *City of Key West v. Florida Keys Cmty. Coll.*, 81 So. 3d 494, 497 (Fla. 2012) (citing *Am. Home Assurance Co. v. Nat'l R.R. Passenger Corp.*, 908 So. 2d

---

[4] Florida substantive law, including sovereign immunity, applies.  *Fluid Dynamics, LLC v. City of Jacksonville*, 752 F. App'x 924, 925-26 n.1 (11th Cir. 2018).

459, 471 (Fla. 2005)). The Florida Constitution provides that the Florida Legislature can abrogate the State's sovereign immunity, but "any waiver must be clear and unequivocal" and "waiver will not be found as a product of inference or implication." *Id*. "In Florida, sovereign immunity is the rule, rather than the exception." *Pan-Am Tobacco Corp. v. Dep't of Corr.*, 41 So. 2d 4, 5 (Fla. 1984) (citing Section 13, Art. X, Fla. Const.). It "protects the state from burdensome interference from the performance of its governmental functions and preserves its control over state funds, property and instrumentalities." *Brevard County v. Morehead*, 181 So. 3d 1229, 1232 (Fla. 5th DCA 2015) (quoting *Davis v. State, Dep't of Corr.*, 460 So. 2d 452, 461 (Fla. 1st DCA 1984)).[5]

The State University System, including the board of governors and boards of trustees, was created by Article IX, Section 7 of the Florida Constitution. Specifically, Section 7(b) of Article IX provides:

---

[5] Sovereign immunity, as a general matter and in its broadest form, bars private citizens from suing states and their instrumentalities for damages. *Stroud v. McIntosh*, 722 F.3d 1294, 1297 (11th Cir. 2013). "Like most general rules, sovereign immunity has two exceptions. The Supreme Court has recognized two ways a private person can sue a state for damages: either (1) Congress can abrogate sovereign immunity by enacting legislation to enforce the substantive provisions of the Fourteenth Amendment, or (2) a state can waive it sovereign immunity." *Id.* at 1298 (citing *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). *In this case*, UFBOT asserts its unwaived sovereign immunity in its broadest form, against any suit for damages or other relief, as UFBOT would have enjoyed in Florida state court. UFBOT also asserts that Congress did **not** abrogate UFBOT's Eleventh Amendment immunity with respect to §1983 claims.

(b) STATE UNIVERSITY SYSTEM. There shall be a single state university system comprised of all public universities. A board of trustees shall administer each public university and a board of governors shall govern the state university system.

Art. IX, §7(b), Fla. Const.

Section 1001.72, Florida Statutes provides:

(1)    Each board of trustees shall be a public body corporate by the name of "The (name of university) Board of Trustees," . . .

(2)    The corporation is constituted as a public instrumentality, and the exercise by the corporation of the power conferred by this section is considered to be the performance of an essential public function. . . .

§1001.72, Fla. Stat. (2010).

UFBOT "as part of the public university system of Florida, enjoys Florida sovereign immunity from contractual liability unless the action is based on an 'express, written contract[ ] into which the state agency has statutory authority to enter.'" *Williams v. Becker*, 608 F. App'x 905, 906 (11th Cir. 2015) (quoting *Pan–Am Tobacco Corp.*, 471 So. 2d at 6, and citing *Cnty. of Brevard v. Miorelli Eng'g, Inc.*, 703 So. 2d 1049, 1051 (Fla. 1997)); *Pinkston v. Univ. of S. Fla. Bd. of Trustees*, Case No. 8:18-cv-2651, 2019 WL 1383467, at *3 (M.D. Fla. March, 27, 2019) (finding board of trustees entitled to sovereign immunity); *Charity v. Bd. of Regents of the Div. of Univ. of Fla. Dept. of Ed.*, 698 So. 2d 907, 908 (Fla. 1st DCA 1997) (affirming board entitled to sovereign immunity and affirming dismissal due to lack of express written contract); *City of Fort Lauderdale v. Israel*, 178 So. 3d 444, 448 (Fla. 4th DCA 2015) ("The aforementioned cases demonstrate that a municipality

waives the protections of sovereign immunity only when it enters into an express contract. When an alleged contract is merely implied, however, these sovereign immunity protections remain in force.").

Plaintiff's allegation that a contract arose between him and UFBOT by his being admitted to the university and paying tuition and fees (FAC¶¶ 2, 12-16, 18-20, 42, 51-57, 61-62, 64) is not sufficient to avoid dismissal of his breach of contract claims. The purported contract Plaintiff identifies and incorporates (FAC ¶70) is "UF's Terms and Agreement –The Contract" (the "Purported Contract"), which clearly falls short of the signed "express written contract" required to overcome UFBOT's sovereign immunity.[6] First, the Purported Contract was not signed by UFBOT. Second, the Purported Contract is devoid of any requirement that UF provide in-person on campus education and services in exchange for tuition and fees paid. As a result, the Purported Contract is simply **not** the required express written agreement between Plaintiff and UF that statutorily mandatory tuition and fees

---

[6] To state a claim for breach of contract, a plaintiff must allege (1) the existence of a contract; (2) a breach of the contract; and (3) damages resulting from the breach. *George v. Wells Fargo Bank, N.A.*, No. 13-80776-CIV, 2014 WL 61487, at *3 (S.D. Fla. Jan. 8, 2014). Dismissal is procedurally justified for Plaintiff's failure to identify which provisions of the purported contract that have been breached, which "runs afoul of *Twombly*" and "renders the pleading deficient under Florida contract law." *Id.*; *Cruz v. Underwriters at Lloyd's London*, No. 8:14-cv-1439, 2014 WL 3809179, at *2 (M.D. Fla. Aug. 1, 2014) ("It is appropriate to dismiss a breach of contract claim if it fails to state which provision of the contract was breached.").

would be apportioned by in-person versus on-line use, or that Plaintiff is entitled to a refund for "unused" tuition or fees.

Moreover, because the allegations in the FAC are contrary to, and negated by the Purported Contract, the Court should reject the contrary allegations and dismiss Counts I and IV. *Crumpton v. Stephens (In re Northlake Foods, Inc.)*, 715 F.3d 1251, 1257 (11th Cir. 2013) (crediting exhibits over allegations in complaint) (citing *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007). Throughout the FAC, the Plaintiff excerpts unsigned "UF Solicitation Brochures" and refers to unsigned informational UF hyperlinks, but these and the Purported Contract **negate** the existence of an express written agreement between Plaintiff and UF that statutorily mandatory tuition and fees would be apportioned by in-person versus on-line use, or that Plaintiff is entitled to a refund for "unused" tuition or fees. *See Carr v. Bd. of Regents. of Univ. System of Ga*, 249 Fed. App'x 146, 150-51 (11th Cir. 2007) (informational documents issued by a state university which are not signed in a state that has not waived its sovereign immunity as to non-written agreements do not create an enforceable agreement by the student against the state university). Additionally, UFBOT directs the Court to *Herssein Law Group v. Reed Elsevier*, 594 F. App'x 606, 608 (11th Cir. 2015), where the Eleventh Circuit stated:

> It is a basic tenant of contract law that a party can only advance a claim of breach of contract by identifying and presenting the actual terms of the contract allegedly breached. *Harris v. Am Postal Workers Union*, 198 F.3d 245 (6th Cir. 1999). The Sixth Circuit, in a breach of contract

case originating from Ohio, concluded that the failure to attach the actual contract coupled with a failure to cite specific language doomed the claim pursuant to the standards of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Crop. v. Twombly*, 550 U.S. 544 (2007). *Northampton Restaurant Grp v. FirstMerit Bank, N.A.*, 492 Fed. App'x 518, 521-22 (6th Cir. 2012).  A plaintiff may not use discovery to locate the contracts in question after filing a suit.  *Id*. at 522.

Despite having taken the opportunity to amend, Plaintiff has failed to identify in the FAC a signed written contract between himself and UF that contains the terms which Plaintiff contends that UF breached.  Instead, Plaintiff has only identified unenforceable informational documents and the Purported Contract, neither of which are sufficient to overcome sovereign immunity.  This is so because there simply is no "express, written contract" between UFBOT and Plaintiff that statutorily mandatory tuition and fees would be apportioned by in-person versus on-line use, or that Plaintiff is entitled to a refund for "unused" tuition or fees.  Indeed, even giving Plaintiff the benefit of the broadest plausible inferences from his allegations, they suggest, *at most*, an implied contract.[7]  *Williams v. Fla. State Univ.*, No. 4:11-cv-350-MW/CAS, 2014 WL 340562, at *5-6 (N.D. Fla. Jan. 29, 2014) (applying sovereign immunity and holding a student's relationship with the university is an implied, not an express, written contract), *aff'd sub nom Williams v.*

---

[7] UFBOT acknowledges these rulings for the purposes of this motion and its citation is **not** intended to signify agreement that the act of matriculating and paying tuition and student fees to a state university creates a contractual relationship of any type. Instead, the Legislature prescribes the mandatory tuition and fees charged by UF to its students such as the Plaintiff.  §1001.705(3)(c) and §1009.24, Fla. Stat.

*Becker*, 608 F. App'x 905 (11th Cir. 2015); *Pinkston*, 2019 WL 1383467, at *4 (citing *Williams* with agreement and concluding Pinkston could only allege an implied contract; thus, the claim was barred by sovereign immunity).  The Florida Supreme Court has made clear that the waiver of sovereign immunity for contract claims pertains <u>only</u> to express, written contracts, and "[w]hen an alleged contract is merely implied,  . . . sovereign immunity protections remain in force."  *Morehead*, 181 So. 3d at 1232 (quoting *Israel*, 178 So. 3d at 447); *Pan-Am Tobacco*, 471 So. 2d at 6 ("We . . . emphasize that our holding here is applicable only to suits on express, written contracts"); *Debose v Univ. of S. Fla.*, 178 F. Supp. 3d 1258, 1269 (S.D. Fla. 2016) (discussing *Pan-Am Tobacco* and other Florida cases and finding sovereign immunity barred implied contract claims); *City of Orlando v. West Orange Country Club, Inc*., 9 So. 3d 1268, 1272-73 (Fla. 5th DCA 2009) (waiver of sovereign immunity only applicable to suits on express written contracts into which the state agency has authority to enter).  Thus, even if Plaintiff had alleged the existence of an implied contract, his claim is still barred by sovereign immunity.

Here, because Plaintiff can never plausibly plead the existence of an express, written contract, Counts I and III of the FAC should be dismissed with prejudice. *See Twombly*, 550 U.S. at 570 (requiring claim for relief to be plausible on its face); *Desantis v. Geffin*, 284 So. 3d 599, 602-03 (Fla. 1st DCA 2019) (directing dismissal with prejudice of class-action breach of contract and contract impairment claims

based on State Board's sovereign immunity), *review denied*, No. SC20-27, 2020 WL 3412333 (Fla. June 22, 2020); *Charity*, 698 So. 2d at 907-908 (holding that it is appropriate to address sovereign immunity due to lack of express written contract at dismissal stage); *City of Gainesville v. State, Dept. of Transp.*, 778 So. 2d 519, 531 (Fla. 1st DCA 2001) (citing *Charity* and reaffirming that lack of express written contract is properly considered on a motion to dismiss).

## III.  Unjust Enrichment Claims are Barred by Florida Sovereign Immunity

Plaintiff's unjust enrichment claims (Counts II and IV) complain of the same actions as the breach of contract claims, and are pled in the alternative to the extent it is determined a contract does not exist or otherwise apply.  FAC ¶¶125-39, 155-64.  "A claim for unjust enrichment is an equitable claim, based on a legal fiction created by courts to imply a 'contract' as a matter of law." *Calderone v. Scott*, No. 2:14-cv-519, 2015 WL 1800315, at *2 (M.D. Fla. April 16, 2015) (quoting *Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 805 (11th Cir. 1999)).  As set forth above, Plaintiff must establish the existence of an express, written contract, rather than an implied contract, in order to overcome the sovereign immunity bar.

As explained by the Florida Supreme Court in *Pam-Am Tobacco*, Florida's express waiver of sovereign immunity in Section 768.28, Florida Statutes, applies only to torts.  *Pan-Am Tobacco*, 471 So. 2d at 5.  With respect to contract claims, the *Pan-Am Tobacco* Court emphasized that waiver of sovereign immunity is limited

to express, written contracts, and nothing else. *Id.* at 6; *Miorelli Eng'g, Inc.*, 703 So. 2d at 1051 (holding claims for work falling outside of express contract are barred by sovereign immunity); *Morehead*, 181 So. 3d at 1232; *Israel*, 178 So. 3d at 446. Thus, "[b]ecause unjust enrichment claims are not torts, Florida's legislature has not waived" its sovereign immunity. *Calderone*, 2015 WL 1800315, at *2 (dismissing unjust enrichment claim with prejudice); *Llorca v. Rambosk*, No. 2:15-cv-17, 2015 WL 2095805, at *2 (M.D. Fla. May 5, 2015) (rejecting plaintiff's claims of oral contract provisions and dismissing unjust enrichment claim with prejudice); *Fin. Healthcare Assocs., Inc. v. Public Health Trust of Miami-Dade County*, 488 F. Supp. 2d 1231, 1236 (S.D. Fla. 2007) (holding claim based on implied contract barred by sovereign immunity); *Cayenta Canada, Inc. v. Orange County*, No. 6:01-cv-1232, 2002 WL 34373972, at *3 (M.D. Fla. Nov. 20, 2002) (holding unjust enrichment claim barred by sovereign immunity based upon the rational of *Miorelli Eng'g, Inc.*). Because no unjust enrichment claim can overcome UFBOT's sovereign immunity protection, Counts II and IV must be dismissed with prejudice. *Calderone*, 2015 WL 1800315, at *2 (dismissing unjust enrichment claim with prejudice); *Llorca*, 2015 WL 2095805, at *2 (dismissing claim with prejudice); *Geffin*, 284 So. 3d at 603 (directing dismissal with prejudice where sovereign immunity bars claim).

## IV.  Sovereign Immunity Bars FDUTPA, §1983 and Conversion Claims

Pursuant to the Florida Constitution, "provision may be made by general law for bringing suit against the state as to all liabilities now existing or hereafter originating."   Section 13, Art. X, Fla. Const.   A limited waiver of sovereign immunity is provided for certain common law tort claims against the state.  §768.28, Fla. Stat.  The Florida Legislature has **not** waived sovereign immunity for claims made under FDUTPA, 42 U.S.C. §1983 or the intentional tort of conversion.

UFBOT immunity is clear for FDUTPA claims.   Section 768.28, Florida Statutes states in part "the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act".  Sovereign immunity for statutory FDUTPA claims has **not** been waived by Section 768.28 because these FDUTPA claims are statutory claims[8], not traditional torts, and nothing in FDUTPA or Section 768.28 amounts to a clear and unequivocal waiver for statutory FDUTPA claims.  *Curcio v. State of Fl. Dept. of Lottery*, 164 So.3d 750, 754 (Fla. 1st DCA 2015); *see also Am Home Assurance*, 908 So.2d at 472 ("[a]ny waiver of sovereign immunity must be clear and unequivocal. Moreover, waiver will not be found as a product of inference or implication.").[9]

---

[8] FDUTPA is a statutory substantive law created in 1973.  *Delgado v. J.W. Courtesy Pontiac*, 693 So.2d 602, 609 (Fla. 2nd DCA 1997).

[9] Federal courts apply essentially identical standards.  *Sossamon v. Texas*, 563 U.S. 277, 284 (2011) ("A State's consent to suit must be unequivocally expressed" in the text of the relevant statute." (citation omitted)).

There is nothing in FDUTPA's statutory text that indicates the Florida Legislature intended to subject state agencies, such as public universities, to FDUTPA liability. Accordingly, based on sovereign immunity that was not abrogated by §768.28, Fla. Stat., for statutory torts, the FDUTPA claims asserted against UFBOT in Counts VII and VIII must be dismissed with prejudice.

UFBOT immunity is equally clear for §1983 claims.  The Florida Supreme Court held in *Hill v. Dept. of Corrections*, 513 So. 2d 129, 133 (Fla. 1987) that §768.28, Fla. Stat., was intended to render the state and its agencies liable for damages for traditional torts under state law, but to exclude such liability for "constitutional torts."  *Id.  Hill* cited with approval *Shinholster v. Graham*, 527 F. Supp. 1318 (N.D. Fla. 1981) and *Gamble v. Florida Dept. of Health and Rehabilitative Services*, 779 F.2d 1509 (11th Cir. 1986).  The United States Supreme Court later overruled *Hill's* prohibition against bringing §1983 claims in Florida courts, but did not disturb *Hill's* broader statement that the waiver of sovereign immunity pursuant to §768.28, Fla. Stat., did not extend to "constitutional torts." *See Garcia v. Reyes*, 697 So. 2d  549, 550 (Fla. 4th DCA) (explaining *Howlett v. Rose*, 496 U.S. 356 (1990)).  In *Bd. of Regents of State of Fla. v. Snyder*, 826 So. 2d 382 (Fla. 2nd DCA 2002), the Second District held the Board of Regents was entitled to sovereign immunity for civil rights action brought under §1983, reasoning that:

> It is well established in both federal and state courts that a state and its agencies are immune from suit arising under 42 U.S.C. §1983 (citations

omitted). Although this state has waived its sovereign immunity for state tort actions, that waiver does not extend to civil rights actions. *See* 768.28, Fla. Stat. (200); *Spooner*, 514 So.2d at 1078; *Hill*, 513 So.2d at 132. Federal law is enforceable in state courts, but only municipal corporations, local government entities, individual officers and other actors who are not arms of the state may be liable under 42 U.S.C. §1983. *See Howlett v. Rose*, 496 U.S. 356, 376-77 (1990). *Id*. at 387.

Accordingly, based on sovereign immunity that was not abrogated by §768.28, Fla. Stat., for constitutional torts, the §1983 claims asserted against UFBOT in Counts IX and X of the FAC must be dismissed with prejudice.

Although not as well settled as with the FDUTPA and §1983 claims, the conversion claims against UFBOT are also barred by sovereign immunity.[10] This is so because conversion is not just "the possession of property by the wrongdoer, but rather such possession in conjunction with a present intent on the part of the wrongdoer to deprive the person entitled possession of the property." *Brand v. Old Republic Nat'l Title Ins. Co*., 797 So.2d 643, 646 (Fla. 3d DCA 2991). *See also Lahtinen v. Liberty International Financial Svcs*, 2014 WL 351999, at *5 (S.D. Fla. 2014) ("After careful consideration, this Court concludes that Florida's Supreme Court would – and has – determined that a plaintiff must prove intent in order to succeed on conversion. Accordingly, intent is a necessary element of conversion."). Because "intent" is a necessary element of conversion, Section 768.28(9)(a)

---

[10]As a threshold matter, Plaintiff has not met the pre-suit notice requirement in Section 768.28(6)(a), a pre-condition to filing suit against state agencies. *Levin v. Dade Co*., 442 So. 2d 210 (Fla. 1983).

immunizes a state agency like the UFBOT from any such claims. *See Sampson v. City of Miami Gardens*, No. 13-24312, 2014 WL 11894447, at *3 (S.D. Fla. 2014). "Intent" is synonymous with "willful" and, as a result, claims for conversion necessarily invoke the sovereign immunity protection set forth in Section 768.28(9)(a). Accordingly, based on sovereign immunity that was not abrogated by §768.28, Fla. Stat., the conversion claims asserted against UFBOT in Counts V and VI must be dismissed with prejudice.

## V.  Eleventh Amendment Bars Plaintiff's §1983 Claim

UFBOT has Eleventh Amendment immunity from Plaintiff's §1983 claims because Congress did not abrogate that immunity, and because state instrumentalities like UFBOT have been held not to be "persons" against whom a §1983 claim can be asserted. *Laipides v. Bd. of Regents. of Univ. System of Ga.*, 535 U.S. 613 (2002). Section 1983 authorizes assertion of a claim for relief against a "person" who has acted under color of state law. A "person" under §1983 includes state and local officials in their personal capacities, as well as municipal entities, but not states or state entities. *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989). As UFBOT is a state entity, it is not a "person" under §1983**.** Plaintiff's §1983 claims must also be dismissed because Congress has not abrogated the States' Eleventh Amendment immunity for §1983 actions. *Williams v. Bd. of Regents of the Univ. System of Georgia*, 477 F.3d 1282, 1301 (11th Cir. 2007); *see also Paylan,*

*M.D. v. Teitelbaum*, 2017 WL 2294084, at *2-3 (N.D. Fla. May 23, 2017) (UFBOT held entitled to Eleventh Amendment protections with respect to plaintiff's §1983 claims); *Bell v. Florida*, No. 6:17-cv-326, 2017 WL 1399975, at *4 (M.D. Fla. Mar. 13, 2017) (plaintiff's §1983 claims against the State of Florida barred by Eleventh Amendment immunity).   Accordingly, based on Eleventh Amendment immunity, Counts IX and X must be dismissed, with prejudice.

## VI.    Plaintiff Does Not Have A Private Cause of Action Against UFBOT

Plaintiff also cannot litigate this matter as a private cause of action against UFBOT.   The Florida Constitution establishes a two-tiered structure for the governance of the public university system, with overall governance being divided between the Legislature and the Florida Board of Governors ("FLBOG"). §1001.705(1)(a), Fla. Stat.   Pursuant to Article IX, Section 7(d) of the Florida Constitution, the FLBOG is responsible for the operation and management of the whole university system, subject to the powers of the Legislature to appropriate for the expenditure of funds.   Chapter 1001, Florida Statutes, and Chapter 1009, Florida Statutes, do not provide a private cause of action for individual litigants who are dissatisfied with what they received in exchange for the tuition and fees charged by UFBOT because there is no language in Chapter 1009 suggesting an intent to create a private cause of action.   *Murthy v. N. Sinha Corp.*, 644 So. 2d 983, 985 (Fla. 1994).

"The question of whether a statute establishes a duty to take precautions to protect or benefit a particular class of persons is no longer determinative on the question of whether a cause of action should be recognized." *Sorenson v. Professional Compounding Pharmacists*, 191 So. 3d 929, 934 (Fla. 2d DCA 2016) (citing *Murthy v. N. Sinha Corp.*, 644 So. 2d at 985). "[L]egislative intent, rather than the duty to benefit a class of individuals, should be the primary factor considered by a court in determining whether a cause of action exists when a statute does not expressly provide for one." *Id.* at 934.[11]  Authority to establish the tuition and fees charged to students rests with the Legislature, which prescribes the mandatory tuition and fees charged.  §1001.705(3)(c) and §1009.24, Fla. Stat.

This is consistent with the rationale for sovereign immunity, "a doctrine designed to protect the public treasury from what would otherwise be countless claims filed by the vast number of citizens affected by the actions of a government. [Sovereign immunity], at least to the extent retained by the legislature and courts, is a positively necessary and rational safeguard of taxpayers' money." *Southern*

---

[11] When the statute is clear and unambiguous, the court will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent. *Universal Property & Casualty v. Loftus*, 276 So. 3d 849, 851 (Fla. 4th DCA 2019) (holding nothing in language of statute or statutory structure indicates a private cause of action was contemplated by the Florida Legislature in enacting the statute). Federal courts similarly hold that private rights of action to enforce federal law must be created by Congress, no matter how compatible with the statute, or how desirable as a policy matter, the creation of private rights might be. *Bellitto v. Snipes*, 935 F.3d 1192, 1202-03 (11th Cir. 2019).

*Roadbuilders, Inc. v. Lee Cnty.*, 495 So. 2d 189, 190 n.1 (Fla. 2d DCA 1986) (citing *Prosser, Law of Torts* 971 (4th Ed. 1971)).  Because there is no private cause of action against UFBOT, Plaintiff's FAC should be dismissed with prejudice.

## VII.   Plaintiff Fails to State a Claim for Relief for Conversion

In addition to and apart from the applicable immunity doctrines addressed above, Plaintiff's claim for conversion fails to state a viable claim as a matter of law. In Counts V and VI, Plaintiff alleges that he has an identifiable legal ownership "to the right and services of an in-person, on-campus educational experience" and "to the services, access, benefits and/or programs paid for through their fees" and Plaintiff has "not, to date, received from Defendants a proper reimbursement" for tuition and fees for the 2020 Spring semester" after the Plaintiff made full payment therefore.  FAC ¶¶168, 170, 178 and 180.  Plaintiff further alleges that "Defendants have therefore converted and continue to convert" Plaintiff's 2020 Spring semester tuition and fees. FAC ¶¶174 and 184.  "In Florida, an action for conversion is regarded as a possessory action and the plaintiff must have a present or immediate right of possession of the property in question."  *United States v. Bailey*, 419 F.3d 1208, 1214 (11th Cir. 2005).  Plaintiff's conversion claims must be dismissed on this ground alone, as Plaintiff has not and cannot established an immediate superior right of possession to the subject in controversy.

Further, "[a] mere obligation to pay money may not be enforced by an action for conversion." *Capital Bank v. G& J Inv. Corp.*, 468 So. 2d 534, 535 (Fla. 3d DCA 1985); *accord Walker v. Figarola*, 59 So. 3d 188, 190 (Fla. 3d DCA 2011) ("The law in Florida is clear-a simple monetary debt generally cannot form the basis of a claim for conversion or civil theft."). Here, the allegations in the FAC and the gravamen of Plaintiff's breach of contract claims are identical to the ones for conversion. "Florida's independent tort doctrine . . . bars a contracting party from recovery in tort where the act complained of relates to the performance of the contract." *Matonis v. Care Holdings Grp., LLC*, 423 F. Supp.3d 1304, 1310 (S. D. Fla. 2019); *Island Travel & Tours Co. v. MYR Indep., Inc.*, No. 3D16-1364, 2020 WL 1451990, at \*3 (Fla. 3d DCA Mar. 25, 2020) ("It is a fundamental, long-standing common law principle that a plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of contract.").

Fungible money also cannot be converted, and here the FAC seeks damages to allegedly compensate Plaintiff for some unidentified portion of the tuition and fees paid to UF for the Spring 2020 semester. Under Florida law, "[m]oney cannot be converted unless the money is a specifically identifiable fund such as an escrow account, a bag of gold coins, or the like*." In re Mouttet*, 493 B.R. 640, 662 (Bankr. S.D. Fla. 2013) (citing *Belford v. Trucking Co. v. Zagar*, 243 So. 2d 646 (Fla. 4th DCA 1970). Stated another way, "[f]or money to be the object of conversion, there

21

must be an obligation to keep intact or deliver the specific money in question, so that money can be identified." *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1056 (Fla. 3d DAC 2008) ("At the time that International Trading received the funds, it had every right to do with them as it pleased. Accordingly, as a matter of law, there was no conversion."). The requirement of specific, identifiable funds usually means that the parties must have intended to maintain the funds at issue "in a separate account or hold the funds in a trust or escrow account." *Walker*, 59 So. 3d at 190. The parties must have "contemplated that a specific sum of money, once delivered to [the defendant], should be kept immutable and inviolate." *Futch v. Head*, 511 So. 2d 314, 321 (Fla. 1st DCA 1987). Here, the Plaintiff has not and cannot allege that UFBOT was under an obligation to "keep intact or deliver" any specific funds received from Plaintiff. Because Plaintiff has not and cannot identify any property that could be subject to a conversion claim, Counts V and VI must be dismissed.

In addition, as for UFBOT's alleged conversion of Plaintiff's claimed "identifiable legal ownership to the right and services of an in-person, on-campus educational experience" (FAC ¶¶168-69) and the "identifiable legal ownership to the services, access, benefits and/or programs paid for through their fees" (FAC ¶¶178-79), it is well established that "intangible property rights cannot, standing alone, be the subject of a conversion claim." *AutoNation, Inc. v. GAINSytems, Inc*., No. 08-61632, 2009 WL 1941279, at *8 (S.D. Fla. July 7, 2009); *see also Al-Ghena*

*Int'l Corp. v. Radwan*, No. 13-61557, 2014 WL 12729283, at *7 (S.D. Fla. April 15, 2014) (dismissing conversion claim with prejudice because "Plaintiffs have not alleged that Defendants have wrongfully retained any non-monetary tangible property"). Accordingly,  Counts IV and V must be dismissed with prejudice.

## VIII.  Plaintiff Fails to State a Claim for Relief for FDUTPA

In addition to and apart from the applicable immunity doctrines addressed above, Plaintiff's FDUTPA claims fail to state a viable claim as a matter of law.  A claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.  §501.211(2), Fla. Stat.; *Rollins, Inc. v. Butland,* 951 So. 2d 860, 869 (Fla. 2d DCA 2006).  Plaintiff's FDUTPA claims suffer the same flaw as his conversion claims – they are simply the breach of contract claims recharacterized as FDUTPA claims.  In Florida, a breach of contract claim without significant allegations of unfair or deceptive conduct is insufficient to state a cause of action under FDUTPA.  *See PNR, Inc. v. Beacon Prop. Mgmt.*, *Inc.*, 842 So. 2d 773, 777 n. 2 (Fla. 2003) (cautioning that a breach of contract claim is not converted to a FDUTPA claim without "conduct that is unfair or deceptive as judged by controlling case law."); *Desantis v. Marriot Ownership Resorts, Inc.*, No. 6:14-CV-733, 2014 WL 6389772, at *3 (M.D. Fla. Nov. 14, 2014) ("this is the same theory that underlies the contract claims, which is insufficient to state an FDUTPA claim under Florida law"); *Hache v. Damon Corp.*, 8:07-CV-1248-T-30EAJ, 2008

WL 912434, at *2 (M.D. Fla. Apr.1, 2008) (citing *PNR* and dismissing FDUTPA claim "[a]s Plaintiffs failed to allege significant deception or malice on the part of Defendants, their allegations are insufficient to state a claim under FDUTPA"); *Willard v. Home Depot, U.S.A., Inc.*, No. 5:09-cv-110/RS-MD, 2009 WL 1884395, at *2 (N.D. Fla. June 29, 2009) ("absent 'significant allegations of unfair or deceptive conduct,' a complaint that merely alleges intentional breach of contract is insufficient to state a claim under FDUTPA").  A claim for FDUTPA also cannot lie where it is based on a contract that the court has ruled unenforceable.  *Bankers Trust Co. v. Basciano*, 960 So. 2d 773, 778 (Fla. 5th DCA 2007) (to hold otherwise would allow every failed contract claim to morph into a FDUPTA claim, and the well-established laws governing contracts should not so casually be dismissed).

Here, Plaintiff's FDUTPA claims are based on allegations that UFBOT made pre-Spring semester 2020 representations about in-person academic instruction and on-campus experiences that were not fulfilled due to mid-Spring semester closures resulting from the unforeseen COVID-19 pandemic.[12]  As Plaintiff's allegations of unfair or deceptive conduct are not independent of Plaintiff's breach of contract allegations, the FDUTPA claims must be dismissed.

---

[12] Under Florida law a misrepresentation must relate to a past or existing fact to be the basis for a claim sounding in fraud; a promise to do something in the future is not actionable fraud. *Sleight v. Sun and Surf Realty*, 410 So. 2d 998, 999 (Fla. 3d DCA 1982); *Cavic v. Grand Bahama Dev. Co.,* 701 F.2d 879, 883 (11th Cir. 1983).

The FAC does not identify what was unfair or deceptive on the part of UFBOT or how an unfair and deceptive act allegedly aggrieved the Plaintiff. "Deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Thunder Marine v. Brunswick Corp*., No. 8:06-cv-384, 2007 WL 2302196, at *8-9 (M.D. Fla. 2007), *aff'd* 277 Fed. App'x 910 (11th Cir. 2008). Plaintiff's FDUTPA claim is based upon alleged detriment to Plaintiff as a result of the university's refusal to jeopardize the safety and welfare of its students, faculty and staff by continuing to provide in-person academic instruction and on-campus experience during the COVID-19 pandemic in the Spring 2020 Semester, a claim for relief not plausible on its face.

Plaintiff has also failed to sufficiently demonstrate "actual damages" caused by UFBOT's alleged deception and unfair practice, which is an essential element of a FDUTPA claim. *See Smith v. 2001 S. Dixie Hwy., Inc.*, 872 So. 2d 992, 994 (Fla. 4th DCA 2004) (affirming dismissal of complaint "because appellant did not allege a recoverable loss under the statute, and therefore, failed to state a cause of action."). Florida's courts routinely dismiss FDUTPA claims where the plaintiff has not suffered any recoverable "actual damages." *Ahearn v. Mayo Clinic*, 180 So. 3d 165, 171 (Fla. 1st DCA 2015). Here Plaintiff asserted he is "entitled to recover actual damages," but fails to identify legally valid actual damages. *See* FAC ¶¶204, 223.

For all of these reasons, Counts VII and VIII must be dismissed with prejudice.

## IX.    Plaintiff Fails to State a Constitutional Takings Claim Under §1983

In addition to and apart from the applicable immunity doctrines addressed above, Plaintiff's takings claims under §1983 are not viable as a matter of law. Plaintiff's takings claims are not viable because Florida law does not recognize him to be the owner of constitutionally protected property interest, and because Plaintiff's voluntary tuition and fee payments do not legally qualify as a "taking".

"The first inquiry for section 1983 is whether the defendant deprived the plaintiff of a constitutionally protected property right". *Key West Harbor Dev. v. City of Key West*, 987 F.2d 723, 727 (11th Cir. 1993). Plaintiff alleges a property interest or right to an unspecified amount of Spring semester 2020 tuition and fees he demands be refunded, based on the implausible contention in FAC ¶¶231-32 and 248-49 that they have "a protected property right in all the fees they paid to the Universities for which they received nothing, or significantly less than they bargained for" and "Defendants elected to seize" Plaintiff's property under color of state law, without notice or due process, which violates due process and §1983. In *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564 (1972), the Supreme Court held:

> In order for an individual to have a protected property interest, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. Property interests, of course, are

> not created by the Constitution. Rather they are created and their
> dimensions are defined by existing rules or understandings that stem
> from an independent source such as state law . . . that support claims of
> entitlement to those benefits. *Id*. at 577.

"Whether Florida law has created a property interest is a legal question for the Court

to decide." *City of Key West*, 987 F.2d at 727. If a property interest asserted in a

takings claim is created by state statutory law, the right must be gleaned from the

statute itself. *Checker Cab v. Miami-Dade*, 899 F.3d 908, 917 (11th Cir. 2018). If

Plaintiff had no constitutionally protected property right or interest under Florida

law, then his takings claims under §1983 fail and must be dismissed with prejudice.

Critically, the FAC pleads no Florida statutory basis for Plaintiff's claimed

entitlement to a property interest in Spring semester 2020 tuition and fees which he

voluntarily paid, and none exists. As addressed in Section VI above, the payment of

fees by all students is required by statute irrespective of whether or not the student

used the related services or participates in the related activity. *See* Section

1009.24(2), Fla. Stat. ("All students shall be charged fees except students who are

exempt from fees or students whose fees are waived.") Tuition must also be paid by

all students by statute, unless specifically exempted or subject to a waiver. *Id; see*

*also* Sections 1009.25 and 1009.26, Fla. Stat. (addressing exemptions and waivers).

Nothing in these statutes create a present possessory interest in any funds paid as

tuition or fees, nor do students have any individually identified interests in such fees.

Tuition and fees paid are deposited into the university's account, *see* §1011.42(2),

but still subject to the Legislature's appropriation authority.  *See* §1011.41, Fla. Stat.; and *Graham v. Haridopolos*, 108 So.3d 597 (Fla. 2013).  Since Chapter 1001, Florida Statutes, and Chapter 1009, Florida Statutes, do not provide a private cause of action for persons who are dissatisfied with what they received in exchange for the tuition and fees charged, Plaintiff certainly cannot establish a "property right."

As addressed in Section VII above, UFBOT has no common law obligation to "keep intact or deliver" any portion of the funds Plaintiff paid to UFBOT for his Spring 2020 semester tuition and fees, which are not specifically identifiable. Plaintiff is also not the owner of the tuition and fees he paid and has no property interest in them.  In the words of the Supreme Court in *Roth*, 408 U.S. at 577, the Plaintiff asserts nothing more than a "unilateral expectation" of a property interest in partial Spring 2020 semester refund proceeds.  Moreover, under Florida law "[i]t is a well-recognized rule that money voluntarily paid under a claim of right to payment, and with knowledge of the facts by the person making the payment, cannot be recovered back." *Sanchez v. Time Warner*, No. 98-211, 1998 WL 834345, at * 2 (M.D. Fla. Nov. 4, 1998).  The gravamen of Plaintiff's lawsuit against UFBOT is for breach of contract, but an alleged contractual debt does not create a constitutionally protected property interest cognizable under §1983.  *See Braden v. Texas A&M University System*, 636 F. 2d 90 (5th Cir. 1981).  Plaintiff's failure to

demonstrate he had a constitutionally protected property interest makes it unnecessary to determine any of the remaining aspects of his §1983 takings claim.

Moreover, to "take" property within the meaning of the Fifth Amendment means to deprive an owner of their own property against their will.  No case holds that a voluntary tuition and fee payment to a public university constitutes a "taking." Thus, by way of analogy, "[i]t is beyond dispute that . . . user fees[13] . . . are not 'takings.'" *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 615 (2013). Instead, "taken" within the meaning of the Fifth Amendment, "implies legal compulsion, not a lack of reasonably priced options. . ." *James v. Global Tel\*Link Corp*, No. 13-4989, 2020 WL 998858, at \*3 (D.N.J. Mar. 2, 2020).

For all of these reasons, Counts IX and X must be dismissed with prejudice.

## X. Plaintiff's FAC Should be Dismissed with Prejudice

In additional to all the legal infirmities explained above, which present legal barriers which cannot be overcome or cured by amendment, and UFBOT respectfully requests the Court dismiss the Complaint *with prejudice*.[14]   *Rance v.*

---

[13]To the extent the user fee analogy is applicable here, the amount of user fees do not need to be calibrated to the use the party makes of the government service.  *See United States v. Sperry Corporation*, 493 U.S. 52, 60-61 (1989).

[14] As further support for a dispositive dismissal, Florida law does not recognize a cause of action for educational malpractice, even if couched under the guise of a breach of contract or other claim.  *C.P. v Leon County School Board*, Case No. 4:03-cv065, 2005 WL 2133699 (N.D. Fla. Aug. 27, 2005) (Florida law recognizes no cause of action for educational malpractice, citing *Fla. Dept. of Health v. B.J.M.*,

*Winn*, 287 Fed. App'x. 840, 841 (11th Cir. 2008) (affirming dismissal of original complaint with prejudice because "district courts need not permit amendment where it would be futile to do so); *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262-63 (11th Cir. 2004) (same). Dismissal of the named plaintiff's claim requires dismissal of the entire Complaint. *Norris v. Smart Document Solutions*, LLC, 483 Fed. App'x 247, 251 (6th Cir. 2012)(dismissal of entire complaint was proper where named plaintiff's individual claims were dismissed); *Robey v. Shapiro, Marianos & Cejda, LLC*, 434 F.3d 1208, 1213 (10th Cir. 2006) ("A putative class action complaint should be dismissed if the named plaintiff's individual claims fail to state a plausible claim for relief."); *Murray v. U.S. Bank Trust*, 365 F.3d 1284, 1293 (11th Cir. 2004) ("Thus, just as plaintiff cannot pursue an individual claim unless he proves standing, a plaintiff cannot represent a class unless he has standing to raise the claims of the class he seeks to represent."). Because Plaintiff has failed to state any viable individual claims, the Court should dismiss the action before proceeding to class

---

656 So. 2d 906, 914 (Fla. 1995)); *Armstrong v. Data Processing Inst.*, 509 So. 2d 1298, 1299 (Fla. 1st DCA 1987) (affirming dismissal of differently labeled claim that was in effect one for educational malpractice); *Newman v. Socata SAS*, 924 F. Supp. 3d 1322, 1329 (M.D. Fla. 2013) ("I conclude that the Supreme Court of Florida would likely refuse to recognize educational malpractice claims against academic institutions–public or private–arising from their delivery of general academic instruction even if they are pleaded as other types of claims."). Thus, Plaintiff's allegations that he is not suing for "academic malpractice" (FAC ¶¶123 and 138) are immaterial.

certification and no notice of this involuntary dismissal need be given to putative

class members.  *Burks v. Arvest Bank*, No.4:06-cv-00551, 2006 WL 3512478, at \*2

(E.D. Ark. Dec. 6, 2006) ("Since the Court has dismissed the sole named Plaintiff's

individual claims, the Court must dismiss the class allegations as well and no notice

of this involuntary dismissal need be given to any alleged unnamed class members").

Dated:  August 21, 2020                    Respectfully submitted,

*/s/ T. Todd Pittenger*
T. TODD PITTENGER, ESQ.
Florida Bar No.:  768936
todd.pittenger@gray-robinson.com
KELLY GARCIA, ESQ.
kelly.garcia@gray-robinson.com
Florida Bar No.:  0694851
JASON ZIMMERMAN, ESQ.
Florida Bar No. 104392
Email: jason.zimmerman@gray-robinson.com
**GRAYROBINSON, P.A.**
301 E. Pine Street, Suite 1400
Orlando, FL  32802-3068
Telephone: 407-843-8880
Facsimile: 407-244-5690

*/s/ George T. Levesque*
GEORGE T LEVESQUE, ESQ.
Florida Bar No.:  555541
George.Levesque@gray-robinson.com
**GRAYROBINSON, P.A.**
301 S. Bronough St., Suite 600
Tallahassee, Florida 32301
Telephone: 850-577-9090
Facsimile: 850-222-3494

*Counsel for Defendant UFBOT*

## CERTIFICATE OF COMPLIANCE OF LOCAL RULE 7.1(F)

I HEREBY CERTIFY that, in accordance with Local Rule 7.1(F) of the United States District Court for the Northern District of Florida, this memorandum contains 7,999 words.

## CERTIFICATE OF ATTORNEY CONFERENCE - NOT REQUIRED

I HEREBY CERTIFY that, pursuant to Local Rule 7.1(D), no attorney conference is required because this motion would determine the outcome of a case or claim.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of August, 2020, I E-filed the foregoing document by using the Court's CM/ECF system which will serve a copy on all counsel of record; and, I further certify that I furnished a copy of the foregoing document by *Electronic Mail* to:

Bryan DeMaggio, Esq.
Wm. J. Sheppard, Esq.
215 Washington Street
Jacksonville, FL 32202
sheplaw@sheppardwhite.com

Thomas J. McKenna, Esq.
Gregory M. Egleston, Esq.
Gainey McKenna & Egleston
501 Fifth Avenue, 19th Floor
New York, NY 10017
tjmckenna@gme-law.com
gegleston@gme-law.com

/s/ T. Todd Pittenger
T. TODD PITTENGER
Florida Bar No.:  768936